Lelia J. Wilson and George F. Wilson, Administrators of the Estate of Frank Wilson, Deceased, Appellants, v. Henry W. Sand, Appellee.

Gen. No. 8,840.

Opinion filed January 10, 1935.

ARTHUR DeROO, of Atkinson, and CONNELLY, WALKER, SEARLE & HUBBARD, of Rock Island, for appellants; FRANKLIN P. SEARLE, of counsel.

FRANCIS C. KING, of East Moline, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellants are the administrators of the estate of Frank Wilson, deceased, who died intestate on May 28, 1923. On January 26, 1924, the administrators filed in the county court an inventory, which described the premises designated in this record as Farm No. 1, consisting of approximately 300 acres of land. The inventory also described another 300 acres of land, upon

which the deceased and his wife lived at the time of his death, which is designated in this record as Farm No. 2. This land was all subject to various mortgages and the inventory so stated. The personal estate which was inventoried was the crops growing on these farms, together with a note of $2,115.11, which was described as desperate, the maker thereof having been adjudicated a bankrupt.

On February 11, 1924, the administrators filed in the county court their petition to sell real estate to pay debts. By this petition it appeared that the claims theretofore allowed against the estate amounted to $6,196.89, and that other just claims would be presented and allowed to the amount of $10,000 in addition to the expenses of administration; that personal property to the amount of $1,002.06 had come into their hands, which had been disbursed and that the personal estate of decedent was insufficient by $16,220.10 to pay the claims. The petition, after describing the real estate sought to be sold, then recited that Farm No. 1 was incumbered by a mortgage executed by deceased and his wife to the Northwestern Mutual Life Insurance Company on August 9, 1918, to secure the payment of $17,000; that there was also a second or junior lien thereon, executed by the deceased and his wife to Dora C. Seyller and Bertha M. Bollenbach on August 13, 1918, to secure the payment of two notes aggregating $7,000; that said premises were also incumbered by a third mortgage, dated September 30, 1921, and executed by the deceased and his wife to Henry W. Sand, appellee herein, to secure the payment of a note for $6,000. Prior to the time this mortgage was executed, but after the execution and recording of the second mortgage to secure the payment of $7,000, a number of judgments were rendered in favor of various parties and against Wilson by the circuit court of Henry county, aggregating more than $15,000, and after the Sand mortgage was executed and filed for

record, other creditors of Wilson obtained judgments against him aggregating $10,000.

It further appeared from the petition that the Northwestern Mutual Life Insurance Company also held a mortgage on Farm No. 2, executed by the deceased and his wife on April 9, 1918, to secure the payment of $17,000, which was a first lien on this farm. This insurance company also held a second mortgage on this farm given to secure the payment of $5,000, said note and mortgage being dated September 9, 1920. On February 2, 1921, Wilson and his wife executed a mortgage covering 70 acres of this Farm No. 2 to secure the payment of a note for $2,700, which they had executed to the Farmers State Bank of Atkinson, appellee herein. These three mortgages were all executed and recorded prior to the time any judgments had been rendered against Wilson.

The petition made all mortgagees, judgment creditors, heirs and holders of the various incumbrances parties defendant and prayed for an order directing the administrators to sell these farms free and clear of all liens and incumbrances of any kind, such liens, however, to attach to the proceeds of the sale in the order of their respective priorities; that the widow's dower and homestead estate be ascertained, assigned and set off to her and that the balance of the proceeds be applied toward the payment of the other debts and obligations of decedent. The widow assented in writing to the sale of her dower and homestead interest in the farms and elected to look to the proceeds of the sale for the money value of her dower and homestead interests.

Service was had or appearances entered by all defendants, and the Farmers State Bank and Henry W. Sand each filed separate answers and the Northwestern Mutual Life Insurance Company defaulted. On February 12, 1925, a decree was entered, which found the liens, both judgment and mortgage, as set forth

in the petition and directed the sale of the land free and clear and disincumbered of the mortgage and judgment liens and of the dower interest and estate of homestead of the widow and provided that the liens of the several creditors should attach to the proceeds derived from the sale of the premises according to their respective priorities. Pursuant to this decree, a sale was properly advertised and had. At the sale, Henry W. Sand purchased Farm No. 1 for $33,780 and Charles W. Vandersnick purchased Farm No. 2, paying $5,600 for the 70 acres upon which the Farmers State Bank had a third mortgage, and paying $25,107.71 for the balance of the land. This sale was duly approved by the court, and on April 25, 1929, the administrators filed a report of their acts and doings as administrators up to that date. Sand and the Farmers State Bank of Atkinson filed objections thereto, and upon the hearing in the county court, some of these objections were sustained by the court and others overruled. Except as to the disbursement for their attorney fees amounting to $2,000, the report of the administrators was approved and from an order directing them to recast their report and eliminate that item, appeals were prosecuted to the circuit court by the administrators. Because Farm No. 1 brought 52.4 per cent of the total purchase price of all the land and Farm No. 2 brought 47.6 per cent of the total purchase price, the administrators in their report asked to be credited with the payment of $1,048 attorney fees out of the fund received from the sale of Farm No. 1 and $952 as attorney fees out of the proceeds received from the sale of Farm No. 2. These two items aggregate $2,000. From that portion of the order of the county court which found that the administrators were authorized to take credit upon their report for the cost of an abstract of title to the premises sold, the amount paid the auctioneers to make the sale, the premiums on the surety bond given by the administrators in connection with the

sale of this real estate to pay debts, and the commissions of $1,934.57 to themselves as administrators, the Farmers State Bank also appealed to the circuit court.

Upon the hearing in the circuit court, that court, upon the appeal of the administrators, ordered the administrators to restate their account, and take no credit for any attorney fees until after the mortgage and judgment liens of Henry W. Sand are paid in full and from that order the administrators have appealed to this court, and that case is General No. 8,840. The circuit court upon the appeal of the administrators also ordered the administrators to restate their account and take no credit for any attorney fees until after the mortgage lien of the Farmers State Bank is paid in full, and from that order the administrators have appealed to this court, and that case is General No. 8,841. The circuit court also, upon the appeal of the Farmers State Bank, ordered the administrators to restate their account and take no credit for administrator fees until after the mortgage lien of the Farmers State Bank is paid in full. From that order the administrators have also appealed to this court and that case is General No. 8,842. Cases No. 8,841 and No. 8,842 have been consolidated with No. 8,840, for the purpose of the hearing in this court.

The question presented for determination upon these records is whether appellants, as administrators, out of money which came into their hands from the proceeds of the sale of decedent's land, can retain a part thereof as commissions to themselves and in addition expend for attorney fees any part thereof when to do so would prevent appellees, as mortgage and judgment creditors, from being paid in full.

Counsel for appellants in their argument state that this question has not been passed upon in this State by either the Appellate or Supreme Court, and they rely upon cases from other jurisdictions, especially *Klimper v. Klimper,* 12 Ohio App. 332, and those fed-

eral authorities which hold that in proceedings in bankruptcy, where the trustee sells the bankrupt estate free of liens, that then court costs, trustees' commissions and attorney fees are first deductible, even though to do so will render the balance insufficient to pay the lienors in full. *In re Williams' Estate,* 156 Fed. 934; *In re Torchia,* 185 Fed. 576. Counsel further insist that inasmuch as the equity of the deceased in his real estate was of uncertain value, there was a chance that the land might sell for more than the liens thereon, and it therefore became the duty of appellants, as administrators, to endeavor to obtain such excess, if any, for the general unsecured creditors of their intestate. In this connection counsel call our attention to the fact that the mortgages were all in default and the mortgagees were made parties to the proceeding to sell; that they made no objection to the sale or to any of the provisions of the decree of sale or to the decree approving the report of the sale, but that now, since it is ascertained that the proceeds of the sales, after payment of the costs of sale and the amounts due the first and second lienholders are insufficient to pay in full the sums due appellees upon their third mortgages, come in and object to the administrators' report upon the ground that they are entitled to have their liens satisfied, even though to do so deprives appellants from retaining any of the proceeds for their services, and prohibits them from paying, out of the proceeds of said sales, any fees to their attorneys for the services which were necessarily rendered in bringing about the sales.

*Bayless v. People,* 56 Ill. App. 55, was an action of debt upon the official bond of an administrator. In that case it appeared that during the course of the administration of the estate of Martha A. Baker, her administrator, Francis M. Bayless, filed his petition in the county court to sell real estate of the deceased in

order to pay the debts and claims against his estate. The real estate sought to be sold was incumbered by a mortgage, and the mortgagees were made parties to the proceedings. The decree found the mortgage to be a valid lien, and the amount due thereon to be $178 and directed the premises be sold disincumbered of the mortgage and ordered the administrator to first pay out of the proceeds of the sale the said amount so found due the mortgagees, together with interest thereon from the date of the decree, then to pay certain taxes and to bring the balance into court for distribution as thereafter ordered. Pursuant to this decree the premises were sold by the administrator for $525 and so reported to the court. Thereafter the administrator filed his final report showing a payment of $100 to the mortgagee, Dick, who had acquired the interest of the other mortgagee, and the balance of the proceeds of the sale were retained as commissions by the administrator and paid out by him for the costs of administration. This final report was approved by the court and the administrator discharged and subsequently suit was instituted upon the administrators' bond. The court held that the order discharging the administrator was inoperative as against the lien creditor, inasmuch as the final report of the administrator only disclosed the payment to the lien creditor of $100, while his report of sale disclosed that he had received from the sale more than sufficient moneys to pay the entire amount due the lien creditor. In that case it was urged that the proceeds of the sale other than the $100 paid the lien creditor were only applied toward the payment of costs; that the proceeding was in effect the foreclosure of the mortgage and that the lien creditor could not expect to have his mortgage foreclosed without having the costs paid out of the proceeds of the sale of the mortgaged premises and that the question of costs was a matter of equitable con-

sideration. In disposing of that contention, the court said that the proceeding was not in fact a proceeding by the mortgage holder to foreclose his mortgage. ''He did not'' continues the opinion, ''come into the court of his own motion for any purpose. He was brought in to show his claim, which was found to be a specific and first lien upon the premises the administrator sought leave to sell. There was no dispute about its amount or character. The property was more than sufficient to pay it. The order of the court was to pay it in full, with interest, without diminution or deduction, and pay on other accounts only the surplus remaining thereafter. The other claims, which the administrator, in disregard of that order, diminished it to pay, were not confined to the costs of the proceedings for the sale, but included taxes, which were not to be paid until the mortgage debt was paid in full, court costs, aside from those incurred in connection with the sale, attorney's fees, and his own commissions and expenses—commissions presumably on the diminished amount he paid the mortgage creditor. His payment of them out of moneys in his hands of right and by adjudication belonging to the creditor, and consequent failure to pay him, in disobedience of the express order of the court, was a wrong done by him to such creditor, which the court could not legally or equitably make right by a subsequent order, merely approving his report of it.'' It is true that in the *Bayless* case the decree specifically directed the distribution of the proceeds of sale while in the instant case the decree made no direction as to distribution, but expressly provided that the several liens should attach to the proceeds of the sale, according to their respective priorities, directed the administrators to file a report thereof and provided that 15 per cent of the amount bid should be paid in cash on the day of sale and the balance upon the confirmation of their re-

port of sale. This report of sale was duly made and a decree entered confirming the same, but there was no provision therein which directed any distribution, and it was not until the final report of the administrators was filed on April 25, 1929, that there was anything of record to indicate how the administrators had distributed the proceeds derived from the sale of this real estate and it was to this report that objections were filed, which for the first time challenged the manner of distribution which the administrators had adopted. This final report discloses that a portion of the funds derived from the sale of this real estate and upon which the several liens of appellees had attached, according to their respective priorities, as provided by the original decree of sale, was retained by appellants for their services as administrators and disbursed by them to their attorneys for services rendered by them in connection with said sale. In our opinion the retention of this portion of the funds derived from said sale was just as violative of the provisions of the original decree as if the original decree had expressly provided for distribution as did the decree in the *Bayless* case. By the provision in the decree in the instant case, the liens of appellees were simply transferred from the land to the proceeds derived from the sale thereof, and now to subject those proceeds to the payment of administrators' fees and attorney fees would be not to use the money of the deceased to pay the costs of administering his estate, but would be using for that purpose the money which rightfully and by all the principles of fair dealing, belongs to appellees, and which the provisions of the decree of sale recognized and sought to protect.

In *Klimper v. Klimper,* 12 Ohio App. 332, it appeared that the mortgagee joined with the administrator in proceedings to sell the real estate of the deceased to pay debts, and the court stressed the fact that the

property was purchased by some one other than the mortgagee, and held that it was not inequitable to charge the proceeds of the sale with an allowance to the administrator for his services and the services of his attorney. In the case of *In re Williams' Estate,* 156 Fed. 934, it appeared that the real estate of the bankrupt was covered by liens and the amount realized from its sale was less than the amount of the liens. The lien creditor filed his claim as a secured creditor and requested that the property covered by his lien be sold by the bankruptcy court. In its opinion, the court reaffirmed a previous holding to the effect that the title to incumbered property upon the owner being adjudicated a bankrupt passes to the trustee in bankruptcy and held that by coming into the bankruptcy court, the lienholder came into an appropriate place and into a court amply able to enforce and protect his rights, that if the lienholder went into another court to enforce his lien, the proceeds derived from the sale of the property upon which he had a lien would be subject to the payment of appropriate costs and so in the enforcement of such lien in a court of bankruptcy, the proceeds of the property upon which such a lien exists is properly chargeable with the costs of such court appropriate to such enforcement.

These authorities are distinguishable from the instant case, as in the *Klimper* case, *supra,* the lienholder joined with the administrator and requested the order with which he was subsequently dissatisfied, and in the *Williams* case, *supra,* the lienholder requested that the property be sold by the bankruptcy court. Not so here, as appellees filed no claims against this estate. Their mortgages, as well as the several judgments, were valid liens against the land inventoried by appellants. The administrators took the property of the deceased subject to these valid liens and incumbrances. Upon the death of appellants' intestate, appellants, as ad-

ministrators, acquired no title to his real estate,—in fact the decedent had only an equity of redemption, *Waughop v. Bartlett,* 165 Ill. 124, and had they sold his real estate subject to the lien incumbrances thereon, no funds would have come into their hands for administration purposes. The administrators were in no way misled because their petition sets forth the value of the farms at $65,000, and recites that the aggregate amount of mortgage incumbrances thereon is $58,000, besides judgment liens aggregating $30,000. Their report of sale discloses that they sold these farms disincumbered of all liens for $64,485.71. The administrators realized therefore that, as their counsel so well express it, ''there was nothing more than a chance that there would come into their hands any sum whatever for the benefit of the general creditors of the estate by the sale of decedent's interest in this real estate.'' Nor are we able to say that appellees were so benefited by the services of the administrators and their attorneys that they should not now be heard to complain. The contract of appellees with the deceased was that the amount due them would be paid when due. At the time of the death of appellants' intestate, the amount due had not been paid. If the sale had not been made by appellants perhaps appellees would have been compelled to foreclose or otherwise enforce their liens, but this contingency never arose because of the action of the administrators in filing their petition to sell. Appellees were made parties, employed counsel who saw that their rights were protected and safeguarded by the decree, which, when the sale was had, transferred appellee's lien to the proceeds which came into the hands of the administrators.

*Marx v. State Bank of Chicago,* 294 Ill. 568, was a proceeding instituted by Frederick Z. Marx to partition certain real estate which, at the time of his mother's death, belonged to her and upon which his

mother had placed two incumbrances in the form of trust deeds to the State Bank of Chicago to secure the payment of $11,300.

The bill set forth the interest of the parties and made the other tenants in common and the State Bank of Chicago parties defendant. The bank answered, setting up its liens upon which there was due $12,423.14 at the time the decree of partition was rendered. The premises not being susceptible of division, a decree of sale was entered, ordering the sale of the premises free from the liens of the bank, and directing the master to hold the proceeds of the sale until the further direction of the court. The property was sold for $12,500 and the report of sale by the master was approved. The costs aggregated $1,051.77 of which amount $625 was for solicitor fees. The chancellor decreed that the master pay all the costs including the solicitor fees out of the proceeds of the sale, and the balance be paid to the bank to be credited upon the amount due it. In its amended answer, the bank averred a default in the payment of interest, and by reason thereof it elected to declare the principal sums due and sought to have the proceeds of a sale, in case there was one, charged with the payment of its indebtedness. In holding that all of the items which went to make up the total cost of $1,051.77, with the exception of $625 solicitor's fee, should be paid out of the proceeds of the sale and the balance applied to the bank's indebtedness, the court said: ''If the partition suit had not been instituted, the bank would have foreclosed its mortgage, the costs of which would have come out of the amount the property sold for at the foreclosure sale. By answering and proving up the amount due it, the bank's liens were ordered paid out of the proceeds of the sale, and it was relieved of the necessity of foreclosure. We repeat, the amount due the bank was increased $250 for its solicitor's fee under the terms of the trust deeds and

notes. Under these conditions, the costs should be apportioned so that at least a part of them should come out of the proceeds of the sale.'' What the court held in this case was that under the Partition Act a mortgagee of the premises sought to be partitioned was a necessary party within the meaning of section 40 of the Partition Act, Cahill's St. ch. 106, ¶ 40, and under that act it was equitable that some portion of the costs be paid from the sale, even though the proceeds are less than the amount due the mortgagee but the deficit should not be further increased by the payment of solicitor fees.

In the instant case, all that the petition of the administrators asked was that the balance of the proceeds derived from the sale of the land of the deceased after the payment of the liens of appellees, as well as the other lienholders, be applied toward the payment of the other debts and obligations of decedent. The decree was in accordance with the prayer of the petition, and transferred appellee's liens from the land to the proceeds derived from the sale thereof. The trial court held that it was proper that the cost of procuring abstracts of title, sale bills, publication notices of sale, service of auctioneers, sheriff's fees for service, premium upon the administrators' bond, and the amount expended in redeeming from tax sales should all be paid out of the proceeds of the sale. In our opinion this was proper and equitable, even though the proceeds derived from the sale are less than the amount due appellees, but in accordance with what was said in the *Marx* case, *supra,* this deficit should not be further increased by the retention of commissions to appellants for their services or by the payment by them of attorney fees. The orders appealed from are therefore affirmed.

*Orders affirmed.*