*In re* ESTATE OF THOMAS H. PHILP, Deceased.—(Heather Investments, Inc., Plaintiff-Appellee, *v.* First National Bank of Blue Island, Defendant-Appellant.)

First District (3rd Division)   No. 82—648

Opinion filed February 9, 1983.—Rehearing denied May 9, 1983.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Thomas G. Vent and Hyman K. Bielsky, of counsel), for appellant.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Mark K. Schoenfield, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Heather Investments, Inc., seeks $37,000 in real estate commissions from defendant First National Bank of Blue Island for Heather's role in the sale of property over which the bank holds a perfected security interest. Pursuant to a court order, $37,000 was deducted from gross sale proceeds at the closing and placed in an interest bearing account pending resolution of Heather's claim. The question of which party had a priority interest in the proceeds of the sale was submitted to the trial court on stipulated facts. The trial court ruled in favor of Heather and the bank appeals.

Prior to his death, Thomas H. Philp owned the beneficial interest in a land trust for which the bank was trustee. The bank also had a perfected collateral assignment of the beneficial interest in that land trust to secure loans to Philp. Philp contracted to sell the land, which was the corpus of the trust, to Leonard Cooper. The contract (Philp-Cooper contract) provided for payment of brokerage commissions by seller to Heather "per Separate agreement." The bank signed the contract as seller but asserted in an exculpatory clause that it was not signing in its individual capacity but merely as trustee. The exculpatory clause was repeated in a contract rider. The loan department of the bank, as secured creditor, also approved the contract.

The brokerage agreement executed subsequent to the Philps-Cooper contract was not attached thereto, nor did the bank, either in its capacity as trustee or secured creditor, have any knowledge of its terms. Signed by Heather and Philp, it provided for a $400 per lot brokerage commission to Heather upon consummation of the sale.

A real estate closing on approximately 10% of the lots occurred under the Philp-Cooper contract. The commissions were deducted from gross proceeds, and the net proceeds were transferred to the bank.

After the death of Philp, the administrator of his estate asked Heather to reduce its commission to aid the administrator in negotiating a new contract with Cooper which would accelerate the closing on the property but at a reduced sales price. Heather agreed to reduce its commission to $250 per lot. The bank took no part in these negotiations and had no knowledge thereof.

Subsequently, the administrator and Cooper negotiated a contract (Administrator-Cooper) for the remaining land trust property which provided for a reduced sales price and an accelerated closing. The bank agreed to the reduction in sales price although the new price reduced proceeds to less than one half the amount of Philp's debt to the bank. The bank insisted, however, that the contract provide for the administrator, rather than the seller, to pay Heather's commission pursuant to a separate agreement. The bank signed as trustee, again adding a clause which exculpated it individually from any liability under the contract. The parties agree that the Administrator-Cooper contract supersedes the Philp-Cooper contract to the extent they are inconsistent.

The administrator subsequently filed a petition for leave to sell the property in question and attached to that petition a copy of the Administrator-Cooper contract. The petition recited that Heather's commission was to be paid from the proceeds of the sale. No similar provision appeared in the contract. Although the bank was both trustee and secured creditor with regard to the properties, it was given no notice of the petition. The trial court approved the petition and ordered that the bank was to receive net proceeds of the sale after payment of Heather's commission.

When notified of the order, the bank objected to the provision which purported to subordinate its secured interest in the proceeds to the payment of Heather's commission. The bank urged that the court modify its order to require that the proceeds of sale be first applied toward the outstanding balance of the loan held by the bank and that Heather's brokerage commission be paid by the administrator in com-

pliance with the real estate sales contract. The court subsequently ruled that Heather had a priority interest in the proceeds.

The bank contends that payment of Heather's brokerage commission is the contractual obligation of the administrator, not the bank, and that the proceeds from the sale of the secured collateral cannot be used to meet that obligation prior to the satisfaction of the bank's secured claim. Heather agrees that it is the administrator's contractual obligation to pay its commission but urges that the administrator be permitted to pay the commission as a cost of sale prior to distributing net proceeds to the bank; that the bank agreed to such priority by signing the Administrator-Cooper contract; and that the bank waived any priority it may have had.

■ Pursuant to the Uniform Commercial Code, absent an agreement to the contrary, the bank as secured creditor is entitled to the proceeds from the sale of its collateral. (Ill. Rev. Stat. 1981, ch. 26, par. 9—203(3).) Heather urges that "proceeds," as used in the Code, means "net proceeds" and that a secured creditor's right thereto is subordinate to the claim of a real estate broker for a sales commission even absent an agreement by the secured creditor to pay such commission. We find no support for this interpretation. "Proceeds" are defined in section 9—306 as "whatever is received upon the sale *** or other disposition of collateral." (Ill. Rev. Stat. 1981, ch. 26, par. 9—306.) As used in a later section of the Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—504), the word clearly refers to gross proceeds. It is unlikely that the legislature would use the same word in two sections of the Code and intend that a different meaning be attached to each.

The cases on which Heather relies for its position that an administrator is required to pay a real estate commission as a cost of sale prior to transferring net proceeds to a secured creditor are distinguishable from the present case. In *Hibernian Banking Association v. Roseboom* (1919), 214 Ill. App. 324, a realtor was allowed to deduct his commission from gross proceeds prior to transferring the balance to the seller. Unlike here, the property was not collateral for a secured loan. *In re Estate of McGaughey* (1978), 60 Ill. App. 3d 150, 376 N.E.2d 259, involved the issue of whether a creditor had a secured interest and consequent priority right to any proceeds in light of its failure to perfect that interest. The question of whether a secured creditor was entitled to gross or merely net proceeds was not addressed. *Vermilion County Production Credit Association v. Izzard* (1969), 111 Ill. App. 2d 190, 249 N.E.2d 352, is also inapplicable. That case involved the sale by a debtor, without the creditor's permission, of corn over which the creditor held a security interest. Although the

proceeds awarded to the secured creditor excluded the amount spent for shelling and hauling the corn, that expense was paid by the buyer. The secured creditor was awarded the amount actually received by the debtor for the sale of collateral. Here, if Cooper had agreed to pay Heather's commission, the amount of the commission would have been excluded from proceeds. This, however, was not the case.

■ Secured collateral which is in the possession of the administrator of the debtor's estate does not become part of the assets of the estate until the creditor's lien upon it is discharged. Likewise, proceeds from the sale of that collateral do not become estate assets until the secured creditor's lien is discharged. (*In re Estate of Yealick* (1979), 69 Ill. App. 3d 353, 387 N.E.2d 399.) Unless the bank agreed to subordinate its lien to that of Heather, therefore, the administrator had no authority to pay Heather's commission with proceeds from the sale of collateral.

■ Heather next suggests that the bank, by signing the Administrator-Cooper contract, did agree to payment of Heather's commission from proceeds. The contract, however, clearly exculpated the bank from individual liability, and provided that the administrator be liable for the commission. We do not see how the bank's signing of that contract could be construed as an agreement to assume liability.

■ We next address Heather's assertion that the bank waived its priority right to proceeds by paying Heather's commission out of gross proceeds pursuant to the Philp-Cooper contract and thereby misleading the other participants into thinking it would continue to do so under the later Administrator-Cooper contract. One obvious fallacy in this claim lies in the essential difference between the two contracts with respect to liability for payment of Heather's commission. In the Philp-Cooper contract, the bank as trustee-seller, was liable. In the Administrator-Cooper contract, the administrator, at the bank's insistence, assumed liability. In light of this difference and the agreement between the parties that the later contract superseded the former, we find no support for the argument that the bank waived its priority right.

We likewise reject Heather's argument that the bank waived its priority right by three letters to the administrator and Heather in which it made reference to payment of Heather's commission out of proceeds. All three letters were written prior to the execution of the Administrator-Cooper contract. Furthermore, the final letter conditioned payment of commissions out of proceeds on the reasonable reduction of Philp's debt to the bank, thereby implying that in the event funds were insufficient, as they are here, the bank would insist on its

priority right to the proceeds.

■ Heather next urges that the bank waived its priority rights to proceeds by signing the Administrator-Cooper contract without setting any limitations with regard to the separate commission agreement to be drawn up by the administrator and Heather. The Administrator-Cooper contract, however, expressly provided that the administrator, not the bank, pay Heather's commission "in accordance with a separate agreement." Since the bank was not even a party to that agreement we fail to see how its failure to set any limitations thereon could have constituted a waiver of its priority rights.

■ We finally address Heather's argument that since the bank would have been liable for real estate commissions if it had foreclosed on the collateral, it should not be permitted to avoid this expense by allowing the administrator to conduct the sale rather than foreclosing and conducting the sale itself. A similar argument was addressed and rejected by this court. *Wilson v. Sand* (1935), 278 Ill. App. 403; *Bayless v. People* (1894), 56 Ill. App. 55.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded with directions that the proceeds of the escrow account should be turned over to defendant First National Bank of Blue Island as payment of its secured loan.

Judgment reversed and remanded with directions.

WHITE and RIZZI, JJ., concur.