[No. 32332-6-I.   Division One.   September 5, 1995.]

*In the Matter of the Guardianship of* INEZ B. WAY.

THE DEPARTMENT OF SOCIAL & HEALTH SERVICES, *Appellant*, v. INEZ B. WAY, *Respondent.*

*Christine O. Gregoire, Attorney General,* and *Alexandra M. Wulsin, Assistant,* for appellant.

*Margaret E. Baran,* for respondent.

GROSSE, J. — Persons who are alleged to be physically or mentally incapacitated are entitled to a jury trial. The State contends that the trial court erred in permitting the jury to determine not simply the broad issue of the incapacity of Inez Way, but the more specific issues of the limitations and restrictions to be placed on her under a limited guardianship. We hold that the statutory scheme contemplates exactly what the trial court permitted: An alleged incompetent or incapacitated person is entitled to a jury trial on the issues of the specific rights and freedoms that are subject to limitation by the proceeding.

The Department of Social and Health Services (DSHS) filed a guardianship petition as to Way on August 31, 1992. The court appointed a guardian ad litem, and Way requested a jury trial pursuant to RCW 11.88.045(3). Prior to trial, DSHS argued that the jury's role should be restricted to the determination of Way's incapacity, and that the question of which rights were to be restricted

under the guardianship was a matter for the court. The court rejected this argument and submitted all the issues to the jury.

The jury found Way incapacitated both as to her person and her estate. A full guardianship was imposed as to Way's estate and all her rights with respect thereto were restricted.[1] A limited guardianship was imposed as to Way's person. In a special verdict form, the jury was asked to determine which rights Way would retain as to her person under the limited guardianship. Notwithstanding its finding of incapacity, the jury determined that Way should retain all the rights set forth in the special verdict form as to her person. Those rights were: the right to give informed consent to medical treatment; the right to determine where she will live; the right to marry or divorce; the right to vote or hold an elected office; the right to decide who shall provide care and assistance; and the right to make decisions regarding social aspects of her life.

DSHS brought a motion for reconsideration, motion to vacate, and motion for judgment notwithstanding the verdict. The court denied the motion for reconsideration, and denied the motion to vacate and the motion for judgment notwithstanding the verdict in all respects except that the court restricted Way's right to decide who shall provide for care and assistance.

In the spring of 1992, after receiving referrals from numerous concerned citizens, a DSHS caseworker visited Way's residence. The caseworker and other social workers and medical personnel who visited the residence testified as to the deplorable living conditions they encountered. The caseworker who initially visited the house found Way, who at the time was in her upper 70s, lying naked in a bed soaked with urine and feces. Her skin was red and

---

[1]Those rights were: the right to enter into a contract or make or revoke a will; the right to appoint someone to act on her behalf; the right to sue and be sued other than through a guardian; the right to possess a license to drive; the right to buy, sell, own, mortgage, or lease property; and the right to make decisions about her personal property.

excoriated. A geriatric nurse practitioner examined Way and found her skin red and sore in her perienal area and blood evident around her bottom. Way was in need of bathing. Her hair was so dirty and matted that it was necessary to cut most of it off.

Windows and doors were broken in the house and the heating system did not work. The roof needed repair, as did the ceilings, floors, and walls inside the house. The interior of the house was filled with clutter and junk. Rats and rat droppings were found throughout the house. Plastic bags of human waste were found in the house, and the plumbing was inoperable.

For the past twenty to twenty-five years, Way lived with Al Soper, who was in his 80s at the time of the proceedings. Soper was Way's sole caretaker. Because Way was bedridden, she completely depended upon him for her every need. Soper wore a pacemaker and suffered from heart trouble. He did not have a driver's license and was unable to drive to grocery stores to bring Way food and supplies. Soper and Way depended upon transients who frequently lived in the house to bring them supplies from convenience stores. These transients sometimes stole money and other items from the house. Soper was characterized as having an obsessive-compulsive disorder that caused him to overload the house with collectibles so that navigation through the house was limited to narrow pathways carved through the clutter. He was experiencing early dementia, memory lapses, and mild Alzheimer's disease. Soper testified that he wanted a "fairy godmother" to come and help him take care of Way.

The guardianship statutes provide for a jury trial as follows:

> The alleged incapacitated person is further entitled upon request to a jury trial on the issues of his or her alleged incapacity. The standard of proof to be applied in a contested case, whether before a jury or the court, shall be that of clear, cogent, and convincing evidence.

RCW 11.88.045(3).

We find that the phrase "on the issues of his or her alleged incapacity," as used in the foregoing statute, permits the jury to decide not only whether the person is incapacitated, but also whether a full or limited guardianship should be imposed, and the limits, if any, to be placed on the guardian's authority. Our interpretation of RCW 11.88.045(3) gives effect to the use of the plural word "issues" in the statute. If the Legislature intended for a jury to determine only the issue of whether a person is incapacitated, then it is reasonable to assume it would have used the word "issue," rather than "issues." Use of the plural rather than the singular is particularly significant since the provision regarding the right to a jury trial and the provision creating limited guardianships[2] were both added to the statute by the same piece of legislation in 1975. *See* Laws of 1975, 1st Ex. Sess., ch. 95, §§ 2, 7. "Legislative intent is to be ascertained from the statute as a whole; and the sequence of all statutes relating to the same subject matter should be considered." *Clark v. Pacificorp*, 118 Wn.2d 167, 176, 822 P.2d 162 (1991). Considering these provisions together, we find it significant that at the same time the Legislature created limited guardianships, and thereby created another "issue of a person's alleged incapacity," it enacted a provision providing a right to a jury trial on issues relating to a person's alleged incapacity. We conclude from this that a jury may consider not only whether a person is incapacitated as to his or her estate and person, or both, but also which limitations should be placed upon the limited guardian's authority.[3]

We also believe that our interpretation of the scope of

[2]"The superior court for each county shall have power to appoint limited guardians for the persons and estates, or either thereof, of incapacitated persons, who by reason of their incapacity have need for protection and assistance, but who are capable of managing some of their personal and financial affairs. After considering all evidence presented as a result of such investigation, the court shall impose, by order, only such specific limitations and restrictions on an incapacitated person to be placed under a limited guardianship as the court finds necessary for such person's protection and assistance." RCW 11.88.010(2).

[3]We note that nothing in the statutory scheme prevents a court from using the jury's determination of the limits to be placed on the guardian's authority solely as an advisory verdict.

the right to a jury trial in guardianship proceedings best serves the practicalities of the situation. A person may be deemed incapacitated as to person or as to his or her estate, or both. *See* RCW 11.88.010(1)(a) and (b). A determination of incapacity is "based upon a demonstration of management insufficiencies over time in the area of person or estate." RCW 11.88.010(1)(c). The statutes set forth the circumstances under which a person may be deemed incapacitated either as to person or estate. Specifically, a person may be deemed incapacitated as to his or her person when that person "has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety." RCW 11.88.010(1)(a). A person may be deemed incapacitated as to his or her estate when that person "is at significant risk of financial harm based upon a demonstrated inability to adequately manage property or financial affairs." RCW 11.88.010(1)(b). Thus, under the statutory scheme, the trier of fact in a guardianship proceeding is called upon to determine whether a person is incapacitated as to person, as to his or her estate, or both, and not whether that person is incapacitated in general. Consequently, whether a person is incapacitated, without the specification of whether the incapacity is as to person or estate, is not an "issue of that person's alleged incapacity," as that phrase is used in RCW 11.88.045(3), the provision providing the right to a jury trial. Rather, the threshold issue is whether the person is incapacitated as to person or estate, as those terms are defined in RCW 11.88.010(1)(a) and (b). We find, therefore, that the "issues of that person's alleged incapacity" on which a person is entitled to a jury trial include the issue of whether the incapacity is as to person or estate.

We further find that the jury was also properly allowed to consider the limits to be imposed upon the authority of the guardian. These issues further define the scope and nature of the person's alleged incapacity by defining the rights that person may retain. As such, they too are "is-

sues of that person's alleged incapacity" and may be determined by a jury pursuant to RCW 11.88.045(3).

In sum, we find no error in the submission of the issues relating to Way's incapacity to the jury by way of the special verdict form.

■ DSHS next contends, assuming the jury's consideration of the issues was proper, the trial court erred by not granting its motion for judgment notwithstanding the verdict in its entirety so as to impose a more restricted guardianship as to Way's person. We disagree.

> In reviewing a trial court's decision to deny a motion for directed verdict or judgment n.o.v., we apply the same standard as the trial court. A directed verdict or judgment n.o.v. is appropriate if, when viewing the material evidence most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. The requirement of substantial evidence necessitates that the evidence be such that it would convince "an unprejudiced, thinking mind".

(Footnote and citations omitted.) *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990).

Preliminarily, DSHS contends that in connection with our review of the trial court's order, we are precluded from considering evidence which was not before the trial court regarding events which occurred subsequent to the entry of the limited guardianship order. DSHS cites the general rule that "a record on appeal may not be supplemented by material which has not been included in the trial court record." (Footnote omitted.) *Snedigar v. Hoddersen*, 114 Wn.2d 153, 164, 786 P.2d 781 (1990). Pursuant to this general rule DSHS argues that we should not consider that within six months of entry of the limited guardianship order, Way was moved to a convalescent center which provides all of her personal care needs. At the facility, Way has undergone physical therapy treatment. She has also received hospital care for upper respiratory problems. DSHS would also have us ignore the fact

that the trial court has authorized the sale of Way's real and personal property.[4] DSHS claims we must review the trial court's actions in light of the circumstances as they existed at the time the limited guardianship order was entered, circumstances that are quite different from present circumstances.

We fail to see the wisdom, or the justice, in reviewing the issues presented in an outdated context. Situations such as those involving dependent children or incapacitated persons are fluid and ever changing. Unfortunately due to the nature of the judicial system within which we operate, immediate review of a dependency order or a guardianship order is not always available. In order to ensure the relief we afford is in the best interests of the parties, particularly the dependent child or the incapacitated person, we must have before us the most complete and up-to-date record possible, even if that means considering evidence or circumstances which were not before the trier of fact. Consequently, we hold that in guardianship proceedings, the general rule precluding supplementation of the record with material not in the trial court record will normally be deemed waived and the record supplemented with information so as to apprise the reviewing court of the most current set of circumstances. We add the caveat that if any supplemental information is contested by the parties a referral to the trial court will normally be required.

In light of the events occurring since the limited guardianship order was entered in the present case, we decline to disturb the trial court's ruling. The statutes require that only such specific limitations and restrictions be placed on an incapacitated person as are necessary for such person's protection and assistance. RCW 11.88.010(2). The evidence shows that with the limitations placed on Way as a result of the court's order, Way has been provided adequate protection and assistance. She is receiv-

---

[4] We note that all of this evidence is in the record before this court, having been designated by Way.

ing the medical attention she needs, she has been removed from the deplorable conditions existing at her residence, and she is living in a facility wherein her personal care needs are satisfied. This living situation in which Way was placed after the guardianship order was entered adequately provides for her health and safety. Present circumstances do not support DSHS's contention that a more restricted guardianship is needed. Moreover, should circumstances change, there is nothing to prevent DSHS from requesting additional relief of the trial court.

For the foregoing reasons, the decision of the trial court is affirmed.

AGID and BECKER, JJ., concur.

Review denied at 128 Wn.2d 1014 (1996).