59 P.3d 93 (2002)
114 Wash.App. 508
WESTERN FARM SERVICE, INC., a Delaware corporation, Respondent and Cross-Appellant,
v.
Lynn J. OLSEN II and Julie Olsen, husband and wife, Defendants,
Key Bank of Washington, National Banking Association, Appellant.
J.R. Simplot Company, a foreign corporation, Respondent and Cross-Appellant,
v.
Key Bank National Association, a national banking association, Appellant,
Lynn J. Olsen II and Julie Olsen, husband and wife, Defendants.
Tri-River Chemical Company, Plaintiff,
v.
Key Bank National Association, a national banking association, Appellant.
No. 19730-1-III.
Court of Appeals of Washington, Division 3, Panel Four.
December 5, 2002.
As Amended on Denial of Reconsideration January 28, 2003.
*95 Donald L. Anderson, Clemencia Castro-Woolery, Eisenhower & Carlson, Tacoma, WA, for Appellants.
Larry W. Larson, Randy J. Fair, Lukins and Annis, Moses Lake, WA, Jerome R. Aiken, Robert C. Tenney, Meyer, Fluegge & Tenney, Yakima, WA, for Respondents.
*94 KATO, A.C.J.
Key Bank National Association (KeyBank) loaned Lynn Olsen money to finance his 1996 and 1997 farming operations. J.R. Simplot Company's chemical and fertilizer division (Simplot) and Western Farm Services (WFS) sold supplies to Mr. Olsen on credit. Both creditors signed an agreement with KeyBank that subordinated their security positions. Simplot and WFS claimed KeyBank improperly failed to pay either of them under the terms of this agreement. A jury agreed. We affirm the judgments in favor of Simplot and WFS.
KeyBank had also filed a counterclaim for conversion against Simplot because it issued a check payable only to Mr. Olsen. Key-Bank's motion for summary judgment on the conversion counterclaim was granted. Simplot cross-appeals this decision. We reverse the summary judgment in favor of KeyBank.
KeyBank financed the farming operations of Lynn Olsen, d/b/a Olsen Agriprises, for the crop years 1996 and 1997. Simplot, WFS, and H & R Ag, Inc., sold fertilizer and other chemicals to Mr. Olsen on credit. Tri-River Chemical Company supplied chemicals and fertilizer to H & R on a wholesale basis for resale to Mr. Olsen. Mr. Olsen was a tenant farmer who did not have land to pledge as collateral. KeyBank thus required Simplot, WFS, and Tri-River to subordinate their lien rights before it would make a loan to Mr. Olsen.
In 1996, the parties entered into a subordination agreement on a standard bank form with a negotiated addendum. The terms of the 1996 addendum provided that if a crop "meets the minimum gross income as budgeted per Lynn Olsen's 1996 budget the income will be split 25% supplier, 75% Key Bank." Exhibit 1.1996 was a poor year for Mr. Olsen and the conditions of the 1996 addendum were not met. As a result, the suppliers were underpaid about $2,143,000.
The parties continued their relationship into 1997. KeyBank again required the chemical and fertilizer suppliers to subordinate their security positions. But the suppliers were concerned about continuing to extend credit to Mr. Olsen. They did not want to extend credit without assurances from KeyBank that the debt owing to them would be satisfied.
Negotiation of the 1997 subordination agreement and addendum began in February 1997. Simplot was represented by Gil Shaw; WFS was represented by Bruce Lee; Tri-River was represented by Gerald Hogan; H & R was represented by Richard Underwood; and KeyBank was represented by Steve Lancaster.
Mr. Olsen submitted a handwritten budget for his farming operations. KeyBank then typed this budget onto a final budget form, *96 making no changes. As part of his budget, Mr. Olsen included a production estimate showing the number of acres he planned to farm, the yield he expected to achieve, and the anticipated price. According to Mr. Olsen, the yield figures in the production budget were based upon the "gross weight" of the potatoes delivered to the processor. Report of Proceedings (RP) at 824. "Gross weight" included the weight of all rock, dirt, and foreign material, as well as all potatoes in the truck, as it came out of the field.
In negotiating the addendum, the suppliers were seeking assurance that they would be paid. They wanted an objective benchmark that, once met, would guarantee payment. The suppliers wanted the addendum to contain an agreement that if 95 percent of the projected budget production of Mr. Olsen's contract potatoes were met, KeyBank "will payoff" the fertilizer and chemical suppliers. Exhibit 14.
On April 9, 1997, Mr. Lancaster requested credit approval from KeyBank for the 1997 loan. As a condition of approval, he proposed that KeyBank would agree to review performance in December 1997 to see if the budget met the appropriate margins prior to allowing payments under the subordination agreement. This proposal was consistent with a draft submitted to Mr. Shaw of Simplot in March 1997.
The loan was approved. A condition of the approval was a subordination addendum, which would include an agreement by KeyBank to review performance in December 1997 to see if the budget met projected margins before allowing payment to vendors. The addendum stated:
If borrower attains 95% of projected budget production of his contracted potatoes, Bank shall review payoff of the undersigned creditors by 12-1-97.
Exhibit 20. The fertilizer company representatives indicated that Mr. Lancaster assured them that "shall review" meant "shall pay" off. RP at 413.
After the parties signed the agreement, Mr. Lancaster told the others that he was monitoring Mr. Olsen's 1997 operations and it looked like he had an excellent crop. On November 21, 1997, Mr. Lancaster met with the suppliers and reconfirmed that the suppliers would be paid if Mr. Olsen obtained 95 percent of budget production for his contracted potatoes. He also indicated Mr. Olsen had in fact met 95 percent of his budget production.
Nonetheless, KeyBank did not pay the suppliers by December 15, 1997. Simplot sued KeyBank and Mr. Olsen for breach of contract. KeyBank counterclaimed against Simplot for conversion. WFS also sued KeyBank and Mr. Olsen for breach of contract. The court consolidated these cases. Tri-River then filed a complaint in intervention against KeyBank. KeyBank was granted summary judgment on its counterclaim for conversion against Simplot. The case proceeded to jury trial. The jury found in favor of Simplot, WFS, and Tri-River.[1] Verdicts were entered in favor of each.

KEYBANK'S APPEAL
KeyBank contends the court erred by refusing to give the following jury instruction:
Oral promises to lend money, extend credit, delay enforcement or to modify or amend the terms under which a creditor has lent money are enforceable if the creditor has provided the following written notice to the other party:
"Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law."
As KeyBank provided plaintiffs with this written notice, you may only consider the promises made by KeyBank to plaintiffs in writing when determining whether or not KeyBank breached the parties' contract.
CP at 1467. This instruction was based upon RCW 19.36.100-.140, the credit agreement statute of frauds.
The refusal to give a requested instruction is reviewed for an abuse of discretion. Bulzomi v. Dep't of Labor & Indus., 72 Wash.App. 522, 526, 864 P.2d 996 (1994). *97 Jury instructions are sufficient if they permit each party to argue its theory of the case, are not misleading, and properly inform the jury of the applicable law when read as a whole. Houck v. Univ. of Wash., 60 Wash. App. 189, 200, 803 P.2d 47, review denied, 116 Wash.2d 1028, 812 P.2d 103 (1991). A party has a right to have its theory of the case presented to the jury if there is substantial evidence to support it. Bulzomi, 72 Wash. App. at 526, 864 P.2d 996.
RCW 19.36.100 defines a credit agreement as
an agreement, promise, or commitment to lend money, to otherwise extend credit, to forbear with respect to the repayment of any debt or the exercise of any remedy, to modify or amend the terms under which the creditor has lent money or otherwise extended credit, to release any guarantor or cosigner, or to make any other financial accommodation pertaining to a debt or other extension of credit.
RCW 19.36.110 addresses the enforceability of such agreements:
A credit agreement is not enforceable against the creditor unless the agreement is in writing and signed by the creditor. The rights and obligations of the parties to a credit agreement shall be determined solely from the written agreement, and any prior or contemporaneous oral agreements between the parties are superseded by, merged into, and may not vary the credit agreement. Partial performance of a credit agreement does not remove the agreement from the operation of this section.
The underlying purpose of a statute of frauds is to prevent fraud, not be a means of perpetuating one. Greaves v. Med. Imaging Sys. Inc., 71 Wash.App. 894, 898, 862 P.2d 643 (1993), rev'd on other grounds, 124 Wash.2d 389, 879 P.2d 276 (1994). The statute of frauds must be strictly construed by courts and not applied to cases that are not squarely within its terms. Sherwood B. Korssjoen, Inc. v. Heiman, 52 Wash.App. 843, 852, 765 P.2d 301 (1988).
The first question is whether the 1997 subordination agreement addendum was a credit agreement. The addendum was an agreement relating to the subordination of priority positions with respect to each creditor's various loans or extensions of credit to Mr. Olsen. It also sets forth a schedule for payment to the various creditors. The subordination agreement stated that KeyBank was making financial accommodations on behalf of Mr. Olsen and the suppliers. It provided that the suppliers would not be paid until after the Bank was repaid. It set forth how and when creditors would be paid. The subordination agreement and addendum dealt with the suppliers forbearing their rights to be repaid the debt owed to them by Mr. Olsen. These characteristics meet the definition of a credit agreement in RCW 19.36.100.
The subordination agreement and its addendum also provide financial accommodations. Chapter 19.36 RCW does not define the term "financial accommodations." In the absence of a definition, statutory construction requires that we give undefined words their common and ordinary meaning. One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc., 108 Wash.App. 330, 340, 30 P.3d 504 (2001). To ascertain this meaning, we may consult a dictionary. State v. Argueta, 107 Wash.App. 532, 536, 27 P.3d 242 (2001). "Financial" is defined as "relating to finance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 851 (1993). "Finance" is defined as the raising of funds or the providing of capital. Id. "Accommodation" is defined as "something that is supplied for convenience or to satisfy a need." Id. at 12.
The subordination agreement and addendum relate to KeyBank's supplying funding or capital to Mr. Olsen in order to allow him to operate his farming enterprises. This was a financial accommodation and met that criterion for a credit agreement under RCW 19.36.100.
But Chapter 19.36 RCW applies only if notice was given as required by RCW 19.36.130. Notice must be given to the parties to a credit agreement on a separate document or incorporated into one of the *98 documents relating to the credit agreement. RCW 19.36.140.
The notice shall be in type that is bold face, capitalized, underlined, or otherwise set out from surrounding written materials so it is conspicuous. The notice shall state substantially the following:
Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.
RCW 19.36.140. If this notice is not given, RCW 19.36.100-.140 will not apply. RCW 19.36.130.
Nothing in the subordination agreement or the addendum complies with the notice requirement of RCW 19.36.140. Notice language was on Exhibit 2, Mr. Olsen's handwritten draft budget to KeyBank, but that language was stricken from the exhibit. Although KeyBank claims the parties admitted reading the notice provision, the record does not support its claim. KeyBank also argues that it made an offer of proof. The record shows only that counsel for KeyBank informed the court that Mr. Lee or Mr. Shaw, if asked, would testify they saw the notice language. Aside from counsel's assertion, no one stated they saw the language.
KeyBank retyped the information contained in Exhibit 2 and sent it to the suppliers. But this retyped document did not contain any notice. The notice required by RCW 19.36.140 was not provided to the parties, so RCW 19.36.100-.140 do not apply. KeyBank was therefore not entitled to a jury instruction on this statute.[2]
KeyBank also appeals the court's denial of its motions for a directed verdict. It asserted that, as a matter of law, there was no agreement regarding the meaning of two of the essential terms of the alleged oral contract, that is, "projected budget production" and "shall review payoff." Exhibit 20. KeyBank also argued the suppliers could not have justifiably relied on Mr. Lancaster's oral representation that "shall review payoff" meant "shall pay."
In reviewing a trial court's decision to deny a motion for a directed verdict, we use the same standard as the trial court, accepting as true the nonmoving party's evidence and all favorable inferences from it. Stiley v. Block, 130 Wash.2d 486, 504, 925 P.2d 194 (1996); In re Guardianship of Way, 79 Wash.App. 184, 191, 901 P.2d 349 (1995), review denied, 128 Wash.2d 1014, 911 P.2d 1343 (1996). A directed verdict is appropriate if the nonmoving party's evidence is insufficient to support the verdict. Stiley, 130 Wash.2d at 504-05, 925 P.2d 194; Way, 79 Wash.App. at 191, 901 P.2d 349.
KeyBank contends the court should have granted its motion for directed verdict on whether the parties agreed to the meaning of "projected budget production" as used in the 1997 addendum. That addendum provided:
If Borrower attains 95% of projected budget production of his contracted potatoes, Bank shall review payoff of the undersigned creditors by 12-1-97.
Exhibit 20. The Addendum does not define "projected budget production." We must initially determine if this term is ambiguous. "A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning." Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wash.App. 267, 275, 883 P.2d 1387 (1994), review denied, 127 Wash.2d 1003, 898 P.2d *99 308 (1995). "Projected budget production" can indeed have several meanings. The term is therefore ambiguous. We must then interpret the term.
"Interpretation is a determination of fact; it is the process that ascertains the meaning of a term by examining objective manifestations of the parties' intent." Denny's Restaurants, Inc. v. Sec. Union Title Ins. Co., 71 Wash.App. 194, 201, 859 P.2d 619 (1993). If only one reasonable meaning flows from the agreement when viewed in context, that meaning necessarily reflects the parties' intent; but a question of fact is presented if two or more meanings are reasonable. Martinez v. Miller Industries, Inc., 94 Wash.App. 935, 943, 974 P.2d 1261 (1999).
Here, the parties argued about what was meant by "projected budget production." There was testimony that the parties intended this term to refer to the yield or gross weight of the potatoes. There was also testimony that the parties intended otherwise. Because there was evidence supporting the jury's verdict, denial of the motion for directed verdict was proper.
KeyBank also claims the court erred by denying its motion for directed verdict as to the meaning of "shall review payoff." It can be argued that this term means only one thing: If the 95 percent benchmark were met, KeyBank had to review paying off the suppliers. But reading this provision with the remainder of the agreement and addendum suggests the term means something else: If the 95 percent benchmark were met, KeyBank had to pay off the suppliers. KeyBank was required to pay off the suppliers if certain conditions were met. If KeyBank had unfettered discretion in paying off the suppliers upon its review, there would be no need for the provision of the addendum at issue. The term is ambiguous.
Because there is an ambiguity as to the meaning of the term, a question of fact exists. Evidence was presented that "shall review" actually meant "shall pay." On the other hand, other evidence was to the contrary. Again, there was evidence to support the jury's verdict. The motion for directed verdict was properly denied.
KeyBank further contends the court erred by denying its motion for directed verdict with respect to Mr. Lancaster's authority to make an oral agreement that "shall review" meant "shall pay." Mr. Lancaster was undisputedly KeyBank's agent. See Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc., 114 Wash.App. 151, 52 P.3d 30, 34 (2002). He had the authority to negotiate with the suppliers as to the terms of the 1997 addendum. What he specifically told the suppliers goes to the meaning of the term as understood by those who signed the contract. The meaning of the term was a question of contract interpretation. Mr. Lancaster's authority was not at issue. The court's denial of the motion for directed verdict was proper.

SIMPLOT'S CROSS APPEAL
Shortly before trial, KeyBank filed a counterclaim against Simplot that alleged it had converted money by issuing a check payable only to Mr. Olsen. KeyBank alleged that Simplot knew KeyBank had a security interest in Mr. Olsen's crops and should thus have named KeyBank as a co-payee on the check.
Mr. Olsen had contracted with the food division of Simplot for many of the potatoes he had grown. One of the contract terms provided that Mr. Olsen would be paid a separate sum for hauling the potatoes to Simplot's processing site. Simplot paid Mr. Olsen $160,607.44 for hauling the potatoes. The check was made payable only to Mr. Olsen because it was solely for the hauling of potatoes.
Claiming KeyBank had no security interest in Mr. Olsen's reimbursement for hauling charges, Simplot moved for summary judgment. KeyBank filed a cross motion for summary judgment. The court granted KeyBank's motion and entered a judgment in its favor for $160,607.44. Simplot cross-appealed.
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wash. State Bank v. Medalia Healthcare L.L.C., 96 Wash.App. 547, 553, 984 P.2d 1041 (1999), review denied, 140 Wash.2d 1007, 999 P.2d 1261 (2000). An *100 order of summary judgment is appropriate if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Id.
KeyBank claimed that Simplot converted money when it issued a check payable only to Mr. Olsen for hauling charge reimbursement. KeyBank asserted that the hauling reimbursement was subject to its security interest. Conversion is the willful interference with any chattel, without lawful justification, whereby any person entitled to it is deprived of possession of the chattel. Id. at 554, 984 P.2d 1041.
It is undisputed that KeyBank had a security interest in Mr. Olsen's potato crop and its proceeds and any payment for the crop or proceeds had to be made jointly to Mr. Olsen and KeyBank. There is also no dispute that Simplot failed to name KeyBank as a joint payee on its check to Mr. Olsen for hauling potatoes. The issue is whether the payment for hauling potatoes constitutes crop proceeds that are subject to KeyBank's security interest.
The term "proceeds" includes whatever is received upon "the sale, exchange, collection or other disposition of collateral or proceeds." Former RCW 62A.9-306(1) (1995).[3] This "expansive definition of `proceeds' indicates that it is to be given a `flexible and broad content.'" Rainier Nat'l Bank v. Bachmann, 111 Wash.2d 298, 302, 757 P.2d 979 (1988) (quoting In re Munger, 495 F.2d 511, 513 (9th Cir.1974)).
Mr. Olsen's contract with Simplot required him to deliver the potatoes to Simplot's designated site. The contract also provided for a separate hauling allowance. This allowance was intended to be a reimbursement for any expenses incurred by the grower to deliver the potatoes to Simplot's processing site.
By the terms of the contract itself, Simplot's allowance for hauling does not constitute proceeds. The money it paid to Mr. Olsen was not for the sale, exchange, or other disposition of the potato crop. It was a reimbursement for expenses Mr. Olsen incurred to deliver the potatoes to Simplot. The payment for hauling potatoes was not proceeds, even if given a flexible and broad reading.
KeyBank relies on Bachmann and Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wash.2d 346, 361-63, 779 P.2d 697 (1989), to support its position. Both are distinguishable on their facts. Neither involves a contract like the one here nor a reimbursement for a service. The court erred by granting summary judgment to KeyBank.
All parties have requested attorney fees on appeal based on the subordination agreement. When a contract specifically awards attorney fees and costs to the prevailing party in an action to enforce the contract, that party is entitled to reasonable attorney fees and costs. RCW 4.84.330. A contract that provides for an award of fees at trial also supports an award of fees on appeal. Marine Enters., Inc. v. Sec. Pac. Trading Corp., 50 Wash.App. 768, 774, 750 P.2d 1290, review denied, 111 Wash.2d 1013 (1988). Because Simplot and WFS have prevailed, they are entitled to fees.
The judgments in favor of Simplot and WFS are affirmed. The summary judgment for KeyBank is reversed. The requests for attorney fees on appeal by Simplot and WFS are granted. KeyBank's request for fees on appeal is denied.
WE CONCUR: SWEENEY and SCHULTHEIS, JJ.
NOTES
[1] Tri-River and KeyBank settled prior to this appeal being heard.
[2] Simplot has filed a motion to strike portions of Keybank's reply brief on the ground that it contains the first mention of the application of the parol evidence rule to this case. A party may not raise an issue for the first time in its reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). But KeyBank's opening brief does contain argument relating to the parol evidence rule. Moreover, Simplot argued in its opening brief that the oral representations were admissible under this rule. KeyBank is entitled to respond. The motion to strike is denied.

In any event, KeyBank argued the court erred by not instructing the jury on the credit agreement statute of frauds. Whether the court properly instructed the jury on, or applied, the parol evidence rule is not an issue raised by the parties.
[3] Now codified in RCW 62A.9A-102(64)(A), (B).