IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| FRANKLIN COUNTY, | ) | |
| | ) | No. 38907-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FUTUREWISE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF PASCO, and PORT OF PASCO | ) | |
| | ) | |
| Appellants. | ) | |

FEARING, C.J. — A cartophile loves to read maps. This appeal concerns the reading of a map, but all cartophiles would find only frustration and no joy in perusing this map. This appeal asks us to determine whether a map labeled as "Agricultural Lands" and identified as Map 8 in Franklin County's 2008 comprehensive plan designated land labeled as "Franklin Crops" for protection as agricultural land of long-term commercial significance (ALLTCS). This determination has significance under Washington's Growth Management Act (GMA), ch. 36.70A RCW, and the State Environmental Policy Act (SEPA), ch. 43.21C RCW. Because of its significance to this appeal, we italicize the term "Franklin Crops" throughout this opinion. If we held that

the 2008 plan identified *Franklin Crops* for ALLTCS protection, as so held by the

Eastern Washington Growth Management Hearings Board (GMHB or Board), the

County violated the two enactments when it placed a portion of the land in Pasco's urban

growth area (UGA) while updating its comprehensive plan in 2018 absent the application

of the requisite ALLTCS de-designation criteria and environmental review process.

This appeal involves the rare instance when abstruseness in a document benefits

the drafter of the document, here Franklin County. Because the law directs us to defer to

the meaning of a comprehensive plan accorded by the County when the plan is not a

model of clarity and the County's interpretation of the plan is reasonable, we rule that the

2008 comprehensive plan did not designate *Franklin Crops* as ALLTCS. We reverse the

GMHB's decision.

FACTS

Franklin County lies in the mid-Columbia region of Washington State. To the

south and west of the County, the Columbia River flows and creates the border with

Benton County. Grant and Adams Counties lie to the north. The Snake River and its

tributary, the Palouse River, create separation from Walla Walla and Whitman counties

on the south and east. The post-World War II Columbia Basin Irrigation Project turned

the County into a fertile crescent for a cornucopia of crops. In 2018, 700,000 of the

County's 809,485 acres of land lay in farmland. The County is rightly proud of its

helping to feed Washington State, the United States, and the world.

2

The city of Pasco is Franklin County's largest city and county seat. The city has undergone phenomenal growth in recent decades. The Washington State Office of Financial Management (OFM) recorded Pasco as having a population of 73,590 residents in 2018. The OFM predicts that, by 2038, the city's population will increase by 48,238 residents, to over 121,000 residents. AR at 1818.

The GMA requires counties to adopt and periodically update a comprehensive plan. RCW 36.70A.020, .130. Comprehensive plans function as the centerpiece of local planning efforts, particularly land use. A comprehensive plan articulates a series of goals, objectives, policies, actions, and standards intended to guide the decisions of elected officials and local government staff. Relevant to this appeal, a comprehensive plan sets the direction for future growth in a county and identifies areas for protection from such growth.

As part of a comprehensive plan, the GMA obliges counties to adopt guidelines for classifying agricultural lands. RCW 36.70A.050(1). Another section of the GMA directs counties to adopt development regulations to assure the conservation of designated agricultural land. RCW 36.70A.060. The GMA requires counties to preserve agricultural land not already designated for urban growth and that poses long-term significance for the commercial production of food or other agricultural products. The GMA categorizes such land as "Agricultural Lands of Long-Term Commercial Significance" (ALLTCS). RCW 36.70A.170(1)(a). Our principal task on this appeal is

to determine whether Franklin County designated some specific acreage of farmland as

ALLTCS in the County's 2008 comprehensive plan.

Pursuant to the GMA, Franklin County updated its comprehensive plan in 2008.

One map and some language in the plan's "Resource Lands" section control this appeal.

Administrative Record (AR) at 1437. According to its duties under the GMA, the County

disclosed, in the "Resource Lands" section, its methods for designating land as ALLTCS.

AR at 1437. Unfortunately, the prose and the map use vague and undefined terms.

Relevant language from the 2008 comprehensive plan read:

## RESOURCE LANDS

The GMA requires counties to identify resource lands of long-term commercial significance, which in Franklin County include agricultural and mineral lands that can be economically and practically managed for commercial production. The Act encourages the conservation of productive resource lands and discourages incompatible uses. Generally, resource lands have special attributes that make them productive which, [sic] cannot be re-created if they are lost to development or mismanaged. The Act defines resource lands as having, [sic] "the growing capacity, productivity, and soil composition for long-term commercial production, in consideration with the land's proximity to population areas, and the possibility of more intense uses of the land." [RCW 36.70A.030 (10)]. . . .
*Franklin County identifies resource lands of long-term significance using distinctive characteristics such as soil types, geological structure, location, and other unique identifiers characteristic of the resource and set forth in the Act. . . .*

## AGRICULTURAL LANDS

The GMA provides that cities and counties should "assure conservation of *agricultural lands of long-term significance*." The Act also

4

requires local government to assure that land uses adjacent to designated
resource lands do not interfere with the continued resource use.

AR at 1437 (emphasis added) (alterations in original). Note that the first sentence of the

last paragraph dropped the word "commercial" from the legal term "agricultural lands of

long-term commercial significance." We proceed as if the two variants hold the same

legal significance.

The 2008 comprehensive plan further read:

### Prime, Unique, & Farmlands of State and Local Significance

Prime agricultural land are lands with soils best suited for producing
food, feed, forage, fiber, and oilseed crops, and are also available for these
uses. They have the soil qualities, growing season, and moisture supply
required to produce economically sustained high yields of crops when
managed according to modern farming methods.

*Farmland soils other than prime farmland used for the production of
specific high value food and fiber crops are classified as unique
agricultural lands. These lands have the special combination of soil
quality, location, growing season, and moisture supply needed to
economically sustain high quality and yields when managed according to
modern farming methods.*

*Areas show in agricultural uses will be in, or already are in
productive crop agricultural (these areas also include grazing land.)* With
water availability, the soils are sufficiently deep for irrigated cropping.
Soils are also sufficiently deep for non-irrigated cropping.

Areas within this designation should be conserved, insofar as is
practicable and desirable, for the continued economic welfare of the farm
industry and residents of the County. . . .

*In Franklin County agricultural lands of long-term commercial
significance are soil classification 1-3 according to the Land Capability
Classification of the USDA Soil Conservation Service. Further, the
County's Prime, Unique, and of State and Local Significance soils as
generally shown and mapped by the Franklin Conservation District on Map*

>   *8, are also described as agricultural lands of long-term commercial
>   significance in Franklin County.*

AR at 1438 (emphasis added).  The last paragraph holds particular importance in this

appeal.

The 2008 plan's definition section contained the following definition for "long-

term commercial significance:"

>   **Long-term Commercial Significance:** The growing capacity,
>   productivity, and soil composition of the land for long-term commercial
>   production, *in consideration with the land's proximity to population areas*,
>   and the possibility of more intense uses of the land.  (RCW 36.70A.030).

AR at 1501 (emphasis added).

The 2008 comprehensive plan continued:

>   Agricultural and its related commercial and industrial businesses
>   provide the economic base in Franklin County.  The diversity of this
>   agricultural base provides a relatively stable economic base and contributes
>   to the areas' cultural heritage and quality of life.
>       Franklin County has approximately 809,485 acres of lands,
>   including approximately *700,000 acres of farmland with a mixture of
>   irrigated land, dryland, and rangeland agriculture.  Map No. 8 illustrates
>   the Irrigated/Dryland fields within Franklin County as provided and
>   updated by the Franklin Conservation District*.
>       Soils in these agriculture areas were classified using the U.S. Soil
>   Conservation Service national classification of agricultural lands.  *There
>   three classifications, Prime, Unique, and those of State and Local
>   Significance.*

AR at 1437 (emphasis added).  The language in the comprehensive plan neither explained

nor defined the term "State and Local Significance."

Map 8 in the 2008 comprehensive plan followed four pages later. Franklin County labeled Map 8 as "Agricultural Lands." AR at 1441.



AR at 1441. The city of Pasco lies within the southwest edge of Franklin County on Map 8. The 2008 plan did not provide that the County designated land within the area labeled "Fields with Quincy Soils" as ALLTCS, but the parties to this appeal agree that land encompassed by that label is ALLTCS.

Unfortunately, Map 8 did not expressly delineate the ALLTCS region or regions in Franklin County. The legend lacked such a category. As already written, the body of

7

the comprehensive plan claimed that Map 8 identified "the County's Prime, Unique, and of State and Local Significance soils." AR at 1438. Nevertheless, when viewed on its own, Map 8 lacked any reference to types of soil. Map 8's legend embraced the terms "Prime Irrigate[d] Lands" and "Prime Dryland," which we assume correlated to the comprehensive plan's reference to "prime farmland," a category of agricultural land discussed further later. AR at 1438, 1441. The legend included no land labeled as "Unique" or "State and Local Significance." Although the legend mentioned "Fields with Quincy Soils," Map 8 did not reveal the soil classifications within this territory, and the body of the 2008 plan did not further reference "Fields with Quincy Soils."

The body of the 2008 comprehensive plan disclosed that Franklin County "identifies resource lands of long-term significance using distinctive characteristics such as soil types, geological structure, location, and other unique identifiers." AR at 1437. Neither Map 8 nor any other language later in the plan assisted the reader in understanding what the County looks for regarding the geological structure of a piece of farmland when determining whether to afford it ALLTCS-protection. The plan did not reveal the "other unique identifiers" for the categories of land listed on the legend of Map 8, but it did reveal them as they relate to prime agricultural lands and unique agricultural lands. AR at 1437. Specifically, the plan's language indicated that growing season and moisture supply are unique identifiers of prime farmland and unique farmland.

8

Map 8's legend listed *Franklin Crops* as one of the categories of land outlined on the map. Map 8 placed some of those areas labeled as *Franklin Crops* immediately adjacent to Pasco's "Urban Growth Boundar[y]" in thin, solid-green lines. AR at 1441. The map depicted land labeled as *Franklin Crops* using irrigation circles and other polygon shapes. Portions of land labeled *Franklin Crops* overlapped with areas of land labeled "Prime Irrigate[d] Lands," "Prime Drylands," and "Fields with Quincy Soils" on Map 8. AR at 1441.

The 2008 comprehensive plan did not employ the term *Franklin Crops* anywhere other than on Map 8. In these proceedings, no party has offered a definition or explanation for the term. We do not know the extent of the acreage within *Franklin Crops*.

Neither party presented evidence to the GMHB as to the subjective intent, in 2008, of Franklin County regarding whether it designated *Franklin Crops* as ALLTCS. No county planner or county commissioner from 2008 came forward to assist. The County asserts that it has consistently interpreted ALLTCS designations within the County to include only those areas labeled on Map 8 as "Prime Irrigate[d] Lands," "Prime Dryland," and "Fields with Quincy Soils" as ALLTCS. AR at 1441. Futurewise contends Map 8 plus prose addressing ALLTCS within the 2008 plan showed an intent on the County's behalf to include *Franklin Crops* within the ALLTCS protection.

9

The body of the comprehensive plan suggested that the United States Soil Conservation Service classifies soils as prime, unique, and those of state and local significance. Our review of United States Department of Agriculture literature does not unearth any such classifications of soil. It does, however, reveal that the USDA classifies agricultural land as "prime farmland, farmland of statewide importance, farmland of local importance, or farmland of unique importance," and assigns these classifications to areas of farmland based on the composition of soil found within the land. See Title 430 – National Soil Survey Handbook (430-622-NSSH, June 2020). Given this information and the language used by Franklin County in the 2008 plan when explaining that "[*p*]*rime agricultural lands* are lands with soils best suited for producing food, feed, forage, fiber, and oilseed crops," and "[f]*armland soils* other than *prime farmland* used for the production of specific high value food and fiber crops are classified as *unique agricultural lands*," this court assumes that, instead of suggesting that the USDA classifies *soil* as prime, unique, and of state and local significance, the County meant to suggest that the USDA classifies *farmland* as prime, unique, or of state and local significance *according to the soil composition of the land*. AR at 1438 (emphasis added).

To repeat, the body of the 2008 comprehensive plan explained that Franklin County categorized ALLTCS as lands with a soil classification of 1-3 according to the Land Capability Classification of the USDA Soil Conservation Service. The USDA

10

recognizes eight classes of soil, 1-8, with the best soil being 1 and then descending in

desirability as the number increases.

A later section of Franklin County's 2008 comprehensive plan declared:

> Soils are an important factor in determining appropriate land use and the costs associated with development. The soils of Franklin County were studied and mapped by the Soil Conservation Service and a soil survey was published in 1914. The Soil Conservation Service updated the soil map for Franklin County during 2005. Area soils have been divided into 13 types, which are presented in Map 1 and generally described in Table 3. In Franklin County, agricultural lands of long-term commercial significance are Soil Types 1-3 according to the Land Capability Classification System of the Soil Conservation Service. The predominate Land Capability Classification of each generalized soil association is additionally identified in Table 3.

AR at 1372-1373. The parties dispute whether any of the land inside areas labeled as

*Franklin Crops* hold soil of the classification of 1, 2, or 3.

Table 3 of Franklin County's 2008 comprehensive plan lists the thirteen varieties

of soils found in the County. The names of the soils often include the names of

agricultural communities in eastern Washington. The table listed the USDA

classification of soils found in each variety of soil. None of the varieties carries Class 1

or Class 2 soils. Three of the thirteen varieties contain Class 3 soil: Ritzville-Renslow-

Ritzcal, Kahlotus-Farrell-Quincy, and Ritzville-Wacota-Ritzcal.

A map entitled "Generalized Soils" follows Table 3 in the 2008 comprehensive

plan. The colored map depicts the location of the varieties of soil within Franklin

County. The map does not contain the term *Franklin Crops*. The areas labeled as

11

*Franklin Crops* on Map 8 contain a variety of different soils, including Quincy-Hezel-Burbank soil, a loamy fine sand to gravely soil. This type of soil variety bears a Class 7 USDA classification, one of the worst classifications for growing crops.

The 2008 comprehensive plan also inserted a map identified as "Map 2 — Land Use Map" and entitled "Comprehensive Land Use Plan." AR at 632, 634. This map did not delineate any area designated by Franklin County as ALLTCS. The legend of Map 2, however, identified an area as "Agriculture." AR at 634. The map does not employ the term *Franklin Crops*. Portions of land labeled as *Franklin Crops* on Map 8, including areas north and south of W. Sagemoor Road, fell within the area identified as "Agriculture" in Map 2. AR at 634.

As required by the GMA, Franklin County updated its comprehensive plan in 2018. At that time, the City of Pasco asked the County to extend the city's UGA by 4,855 acres of land and to designate the acreage as low density residential, mixed residential, industrial, and commercial. The County responded that the request was excessive. Pasco reduced its request to 3,573 acres of land.

The 2018 comprehensive plan initially proposed to remove and place in the UGA nine acres of indisputably ALLTCS-designated farmland. Pasco eventually eliminated the nine acres from its proposed UGA expansion.

After Pasco reduced its proposed UGA expansion, the city wrote that the "proposed Urban Growth Area avoids agricultural lands of long-term significance."

12

AR at 2442.  The Franklin County director of planning and building confirmed this

conclusion in a November 17, 2020 Franklin County Planning Workshop.

Franklin County's planning staff prepared a report for the Franklin County Board

of County Commissioners when the commissioners considered adoption of the 2018

comprehensive plan.  The report claimed that Pasco's UGA expansion included no acres

earlier designated as ALLTCS.  The report assumed that the 2008 plan did  not designate

*Franklin Crops* as ALLTCS, but did not analyze the question.  The staff report read:

> No agricultural resource lands are proposed for inclusion in the
> UGA as the City worked diligently to specifically exclude lands that have
> been previously identified as agricultural resources lands (also known as
> Agricultural Lands of Long-Term Commercial Significance) in the 2008
> Franklin County Comprehensive Plans.

AR at 2520 (footnote omitted).

Before adopting its 2018 comprehensive plan modifications, Franklin County

completed a SEPA checklist.  As part of the checklist, the County issued a declaration of

nonsignificance that stated its proposal "does not have a probable significant adverse

impact on the environment."  AR at 1791.  The County further declared that an

environmental impact statement was not required under RCW 43.21C.030(2)(c).

On June 1, 2021, Franklin County passed Ordinance 07-2021, which adopted the

2018 comprehensive plan modifications.  The plan increased the city of Pasco's UGA by

3,407 acres and placed, into the UGA, portions of land labeled as *Franklin Crops* on Map

8 found immediately north of Pasco in the 2008 comprehensive plan.

In its 2018 comprehensive plan, Franklin County wrote about its ALLTCS

designation criteria:

Consistent with WAC 365-190-050 the following criteria will be used when determining whether an area will be designated as Agricultural Resource Lands or whether it should be considered for an alternative use (dedesignated) and may only be used during a county-or area-wide process (and not on a parcel-by-parcel basis). The County should consider requests for de-designation only in connection with Urban Growth Area expansion requests, and during Periodic Updates of the Comprehensive Plan.

**1. The land is not currently characterized by urban growth.**

Designated Agricultural Resource Lands make up the majority of Franklin County. Agriculture and its diverse, but related, commercial and industrial businesses provide a relatively stable economic base in Franklin County that contributes to the cultural heritage and quality of life in the area. These lands do not include urban growth and of the approximately 809,485 acres of land, approximately 700,000 acres are farmland with a mixture of irrigated land, dryland, and rangeland agriculture. Map 17 illustrates the Irrigated/Dryland fields within Franklin County as provided by the Franklin Conservation District with other features, such as UGA outlines, for reference. Counties and cities must have a program for the transfer or purchase of development rights prior to designating agricultural resource lands in urban growth areas in accordance with WAC 365-190-150(1).

**2. The current use of the land is agriculture, or the land is capable of being used for agriculture.**

The second criteria for determining whether an area is or should be designated as Agricultural Resource Land considers the current use of the land and the physical and geographic characteristics of the land. Areas shown on the Land Use Map in agricultural uses will be in, or already are in productive crop agriculture (these areas also include grazing lands). With water availability, the soils are sufficiently deep for irrigated cropping. Soils are also sufficiently deep for non-irrigated cropping. Specific information about the type and quality of soil also leads to determining whether the land is ideal for agriculture. Soils in Franklin County were classified using the Natural Resources Conservation Service national classification of agricultural lands. A map of the classifications and more

14

information about the soils in Agricultural Resource Lands can be found in the Natural Element of this Plan.

**3. The land has long-term commercial significance for agriculture.**

The third consideration when designating Agricultural Resource Lands is whether or not the land has long-term commercial significance for agriculture. The criteria for this decision are listed in WAC 365-190-050(3)(c) and are used to designate agricultural lands of long-term commercial significance in the County. One of those criteria is the classification of prime and unique farmland soils as mapped by the Natural Resources Conservation Service. In Franklin County, agricultural lands of long-term commercial significance have soils classified as 1-3 according to the Land Capability Classification of the United States Department of Agriculture (USDA) Soil Conservation service. The County's Prime, Unique Farmland, and Farmlands of State and Local Significance are shown and mapped by the Franklin Conservation District on Map 17 and are also designated as agricultural lands of long-term commercial significance in Franklin County. Appendix 5 shows this information in greater detail in a series of six maps.

AR at 1208-09.

Map 17, referenced in the above-quoted paragraphs, parallels Map 8 found in the 2008 plan, but does not include in its legend the term *Franklin Crops*. The County labeled Map 17 as "Designated Agricultural Resource Lands." AR at 1210. We include Map 17 below:

15



AR at 1210.

As with Map 8 to the 2008 comprehensive plan, Map 17 to the 2018 comprehensive plan did not expressly label the area or areas of land designated by Franklin County as ALLTCS. So, we assume that the County intended for all three categories of "Ag Resource" land to hold the ALLTCS designation. AR at 1210. Also, as with Map 8 of the 2008 plan, Map 17 did not identify the type and government classification of soils found in the many farmlands in the County.

In September 2019, Futurewise compiled an appendix titled "Soils Pasco Urban Grown Area (UGA) Expansion." AR at 421-22. Futurewise garnered the information for

the appendix from the Natural Resources Conservation Service. The appendix read that 94.8 percent of the area in the northwest section of Pasco's UGA expansion contained "Land Capability Classification 1 through 3 soils." AR at 421. The appendix further read that 80.6 percent of the area in the northeast section of the UGA expansion contained "Land Capability Classification 1 through 3 soils." AR at 422. The appendix did not list what percentage of acreage fell within the respective three soil classifications.

The GMA and SEPA require counties to follow a process for de-designating land previously designated as ALLTCS. This process demands the application of specific ALLTCS de-designation criteria and an analysis of the environmental impacts that may result from de-designation. Franklin County did not apply ALLTCS de-designation criteria or complete an environmental analysis when revising the agricultural land map to eliminate the term *Franklin Crops* and to place a portion of *Franklin Crops* land into Pasco's 2018 UGA. The County either impliedly or expressly concedes that, if the 2008 comprehensive plan designated *Franklin Crops* as ALLTCS, the GMHB's decision should be affirmed and the County directed to engage in this environmental review.

## PROCEDURE

Futurewise is a Washington organization created to assist communities with environmentally sound growth strategies. On August 5, 2021, Futurewise challenged, before the GMHB, Franklin County's adoption of Ordinance 07-2021 and the 2018 comprehensive plan. The GMHB allowed the City of Pasco and Port of Pasco to

17

intervene, and both entities joined the County in seeking dismissal of the challenge.

Before the GMHB and this court on appeal, all three municipal corporations generally

advance the same positions. Thus, we reference only the County as the defending party

to Futurewise's challenge.

In its challenge, Futurewise contended that the 2018 comprehensive plan violated

the GMA because Franklin County did not use the proper criteria to de-designate, as

ALLTCS, the areas of land labeled as *Franklin Crops* on Map 8 in the 2008 plan.

Futurewise highlighted the following language in the 2008 plan:

> In Franklin County agricultural lands of long-term commercial
> significance are soil classification 1-3 according to the Land Capability
> Classification of the USDA Soil Conservation service. Further, the
> County's Prime, Unique and of State and Local Significance soils as
> generally shown and mapped by the Franklin Conservation District on Map
> 8, are also described as agricultural lands of long-term commercial
> significance in Franklin County.

AR at 1093 (footnote omitted). Futurewise asserted that the County designated *Franklin*

*Crops* as ALLTCS in the 2008 plan, because *Franklin Crops* is mentioned on the plan's

Map 8, contains land with soil classifications of 1-3, includes prime farmland and

farmland of statewide importance, and was not labeled any differently than the "Prime

Irrigate[d] Lands," "Prime Dryland," or "Fields with Quincy Soils" classifications. AR at

1441.

Franklin County responded that it did not designate *Franklin Crops* as ALLTCS in

the 2008 plan. The County maintained that, although it uses soil classifications as one

18

factor in determining whether to designate land as ALLTCS, soil type alone does not

control the designation. The County explained that it removed the *Franklin Crops* label

from Map 17 of the 2018 plan because the 2008 plan lacked any definition for the term.

The GMHB ruled in favor of Futurewise. The Board wrote:

> Based upon the Board's review of the record, it is clear that the County's 2008 comprehensive plan designated the "Franklin Crops" as ALLTCS. The 2008 comprehensive plan states:
>
>> In Franklin County agricultural lands of long-term commercial significance are classification 1-3 according to the Land Capability Classification of the USDA Soil Conservation service. Further, the County's Prime, Unique and of State and Local Significance soils as **generally shown and mapped by the Franklin Conservation District on Map 8, are also described as agricultural lands of long-term commercial significance in Franklin County**.
>
> There is no dispute that "Franklin Crops" are included on Map 8. As illustrated below, a review of Map 8 includes the "Franklin Crops," outlined in a sold green line, the "Prime Irrigate Lands," shaded green, and the "Fields with Quincy Soils," shaded pink. The "Franklin Crops" also include prime farmland and farmland of statewide importance.
> Because "Franklin Crops" are included on the County's Map 8 of ALLTCS and have land capability soil classifications of 1-3 and qualify as agricultural lands of long-term commercial significance under the 2008 comprehensive plans, the Board finds that the 2008 comprehensive plan, including Map 8, was not ambiguous in its inclusion of the "Franklin Crops" as ALLTCS. The plain language of the 2008 comprehensive plan supports this finding, and the Board cannot look beyond the language of the comprehensive plan itself to decide otherwise.
> . . . .
> **The Board** finds that the record indicates that the 2018-2038 comprehensive plan de-designated the "Franklin Crops" ALLTCS identified on Map 8 of the 2008 comprehensive plan without applying de-designation criteria.

19

AR at 1126-28.

The GMHB entered combined findings of fact and conclusions of law for four

discrete issues it reviewed. Each combined finding and conclusion reads more like a

conclusion of law or a mixed finding and conclusion, rather than an unadorned finding of

fact. On the issues before this reviewing court, the Board wrote:

> **Issue 1:**
> A. The Board finds that the area designated as "Franklin Soils" included land capability soil classifications of 1-3, were included on the map designating ALLTCS in the 2008 Comprehensive Plan, and otherwise were included as ALLTCS under the County's 2008 Comprehensive Plan.
> B. The Board finds that the 2018-2038 comprehensive plan failed to include "Franklin Soils" as ALLTCS and failed to apply de-designation criteria identified by the Board and Washington courts.
> C. The Board finds and concludes that the Petitioner [Futurewise] has met its burden in demonstrating that the County [is] in noncompliance with the requirements of the GMA in de-designating the "Franklin Soils" ALLTCS.
> . . . .
> **Issue 3**
> A. The Board finds that the Pasco FEIS [final environmental impact statement] and other SEPA documents included in the record failed to disclose the environmental impacts of the de-designation of the "Franklin Crops" ALLTCS and any environmental impacts.
> B. The Board finds and concludes that the Petitioner has met its burden in demonstrating that the County is in noncompliance with the requirements of the SEPA in failing to disclose and analyze de-designating the "Franklin Soils" ALLTCS.

AR at 1136-37. We assume the GMHB meant *Franklin Crops* when referencing

"Franklin Soils" in its findings for Issue 1.

20

Franklin County appealed the GMHB's ruling to the superior court. The superior court certified the appeal for review by this court without any superior court ruling.

## LAW AND ANALYSIS

On appeal, Franklin County maintains that the GMHB committed legal error and that the evidence did not support the Board's findings when the Board ruled that the 2008 comprehensive plan designated *Franklin Crops* as ALLTCS. The County either impliedly or expressly agrees that, if *Franklin Crops* were designated as ALLTCS in the 2008 plan, it failed to adequately de-designate *Franklin Crops* as ALLTCS in the 2018 plan and prepare the environmental review required under SEPA when placing land previously designated as ALLTCS in Pasco's UGA. If the 2008 plan omitted *Franklin Crops* from ALLTCS designation, Futurewise does not otherwise contend that the County violated the law.

Before directly reviewing this appeal's primary question, we must resolve a procedural assertion of Futurewise. We also first discuss our standard of review and the method or methods by which we resolve the key question of whether *Franklin Crops* were designated as ALLTCS in the 2008 plan.

### Findings of Fact

We previously quoted the findings of fact for Issues 1 and 3 encompassed within the GMHB's final decision and order. Futurewise maintains that Franklin County, in its assignments of error, reworded some of the GMHB's findings and conclusions and that

21

the County did not refer to the challenged findings by number.  Futurewise also asserts

that the County's colleague, the City of Pasco, failed to make a separate assignment of

error for these findings of fact and did not refer to them by number.

RAP 10.3(g) declares in part:

> A separate assignment of error for each finding of fact a party
> contends was improperly made must be included with reference to the
> finding by number.

RAP 10.3(h) reads:

> Assignments of Error on Review of Certain Administrative Orders.
> In addition to the assignments of error required by rules 10.3(a)(4) and
> 10.3(g), the brief of an appellant or respondent who is challenging an
> administrative adjudicative order under chapter 34.05 RCW shall set forth a
> separate concise statement of each error which a party contends was made
> by the agency issuing the order, together with the issues pertaining to each
> assignment of error.

(Boldface omitted.)  Futurewise asserts that the relevant findings of fact are verities

because the County and City of Pasco failed to comply with RAP 10.3(g).  Although

Futurewise does not expressly so argue, adoption of this assertion would effectively end

this appeal.

The GMHB lettered, rather than numbered, its findings of fact.  Contrary to the

implication of Futurewise, Franklin County assigned by letter its challenged findings of

fact and conclusions of law.  Also, the City of Pasco incorporated separate assignments of

error for each of the challenged findings.  For these reasons alone, we reject Futurewise's

request that we accept all of the GMHB's findings of fact as verities.

22

We also reject Futurewise's technical argument because the challenged findings are more in the nature of conclusions of law. The challenged findings entail an interpretation of a county document when the underlying facts are not challenged. The line between a finding of fact and a conclusion of law can be challenging to identify. *Leschi Improvement Council v. Washington State Highway Commission*, 84 Wn.2d 271, 282-84, 525 P.2d 774, 804 P.2d 1 (1974) (plurality opinion). A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect. *State v. Williams*, 96 Wn.2d 215, 220-21, 634 P.2d 868 (1981). If a statement carries legal implications, the validity of the statement is a conclusion of law. *Para-Medical Leasing, Inc. v. Hangen*, 48 Wn. App 389, 397, 739 P.2d 717 (1987). RAP 10.3 does not require a separate assignment of error or any numbering for challenges to conclusions of law.

Finally, Futurewise does not assert, as a result of any purported failure by Franklin County and its allies to satisfy RAP 10.3(g), any confusion regarding the arguments that the government entities asseverate on appeal. This court readily understands the nature of the County's challenge to the GMHB's ruling. Futurewise ably and zealously responds to the County's arguments.

We construe the rules of appellate procedure liberally to promote justice and facilitate the decision of cases on the merits. RAP 1.2(a); *State v. Olson*, 126 Wn.2d 315, 318-19, 893 P.2d 629 (1995). When the nature of the appeal is clear and the relevant

issues are argued in the body of the brief, we will consider the merits of the case

regardless of the failure to properly assign error. *Ferry County v. Growth Management*

*Hearings Board*, 184 Wn. App. 685, 725, 339 P.3d 478 (2014).

Standard of Review

The GMA charges the GMHB with adjudicating GMA compliance and

invalidating noncompliant plans and development regulations. RCW 36.70A.280, .302;

*Lewis County v. Western Washington Growth Management Hearings Board*, 157 Wn.2d

488, 497, 139 P.3d 1096 (2006). RCW 36.70A.320(3) declares:

> [T]he board shall determine whether there is compliance with the
> requirements [of the GMA]. . . . The board shall find compliance unless it
> determines that the action by the state agency, county, or city is clearly
> erroneous in view of the entire record before the board and in light of the
> goals and requirements of [the GMA].

For an action to be clearly erroneous, the GMHB must have a "firm and definite

conviction" that the county committed a mistake. *Lewis County v. Western Washington*

*Growth Management Hearings Board*, 157 Wn.2d 488, 497 (2006) (quoting *Department*

*of Ecology v. Public Utility Dist. No. 1 of Jefferson County*, 121 Wn.2d 179, 201, 849

P.2d 646 (1993)).

RCW 36.70A.3201 declares:

> [T]he legislature intends for the board to grant deference to counties
> and cities in how they plan for growth, consistent with the requirements and
> goals of [the GMA]. Local comprehensive plans and development
> regulations require counties and cities to balance priorities and options for
> action in full consideration of local circumstances. The legislature finds

24

that while [the GMA] requires local planning to take place within a
framework of state goals and requirements, the ultimate burden and
responsibility for planning, harmonizing the planning goals of [the GMA],
and implementing a county's or city's future rests with that community.

Whereas the GMHB reviewed Franklin County's decisions, we review the Board's

decision.  The Administrative Procedure Act (APA), ch. 34.05 RCW, governs judicial

review of GMHB actions, including those concerning a county's compliance with the

GMA or SEPA.  *Thurston County v. Western Washington Growth Management Hearings*

*Board*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008).  The appellant carries the burden of

demonstrating the invalidity of the Board's decision.  RCW 34.05.570(1)(a); *Thurston*

*County v. Western Washington Growth Management Hearings Board*, 164 Wn.2d 329,

341 (2008).  This court is not bound by the GMHB's interpretation of the GMA, but must

afford substantial weight to the Board's interpretation.  *Thurston County v. Western*

*Washington Growth Management Hearings Board*, 164 Wn.2d 329, 341-42 (2008).

The appellant is entitled to relief from an agency's adjudicative order if it meets

any of nine standards delineated in RCW 34.05.570(3).  *Lewis County v. Western*

*Washington Growth Management Hearings Board*, 157 Wn.2d 488, 498 (2006).

Franklin County seeks relief from GMHB's decision under RCW 34.05.570(3)(d) and

(e).  Those subsections read:

> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when
> viewed in light of the whole record before the court, which includes the

> agency record for judicial review, supplemented by any additional evidence
> received by the court under this chapter.

This court reviews challenges raised under RCW 34.05.570(3)(d) de novo and reviews those raised under RCW 34.05.570(3)(e) for substantial evidence, meaning "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." *City of Redmond v. Central Puget Sound Growth Management Hearings Board*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998) (quoting *Callecod v. Washington State Patrol*, 84 Wn. App. 663, 673, 929 510 (1997)).

We defer to the statutory interpretation of an administrative agency charged with administering and enforcing a statute. *Hama Hama Co. v. Shorelines Hearings Board*, 85 Wn.2d 441, 448-49, 536 P.2d 157 (1975). We could take this principle to require us to defer to Franklin County, charged with administering the GMA when updating its comprehensive plan. We could also read this principle to demand that we defer to the GMHB, charged with enforcing the GMA. In the end, we conclude we should defer to the County's interpretation of the comprehensive plan because the parties do not dispute the meaning of any of the provisions of the GMA.

We note the ostensibly conflicting legislative policies that the GMHB defer to Franklin County and this court defer to the Board. Does this reviewing court defer to the GMHB if the Board fails to defer to the County? The Washington Supreme Court has answered this question. Deference to county planning actions consistent with the goals

and requirements of the GMA supersedes deference granted by the APA and courts to

administrative bodies in general. *Quadrant Corp. v. State Growth Management Hearings

Board*, 154 Wn.2d 224, 238, 110 P.3d 1132 (2005). If we determine that the GMHB

failed to defer to the County, we will not defer to the Board.

Comprehensive Plan Interpretation

In addition to addressing our standard of review, we must ascertain how to read

the controlling language in Franklin County's 2008 comprehensive plan, including the

details of Map 8. Futurewise asks us to apply rules of statutory construction when

reading the 2008 comprehensive plan. It cites *Lakeside Industries v. Thurston County*,

119 Wn. App. 886, 896-97, 83 P.3d 433 (2004) to support this request. Yet, *Lakeside

Industries* concerned a zoning ordinance, not a comprehensive plan.

Regardless, we do not consider rules of statutory construction contrary to our

ruling. Courts must ascertain and carry out the intent and purpose of the local legislative

body promulgating a local ordinance or code. *Neighbors of Black Nugget Road v. King

County*, 88 Wn. App. 773, 778, 946 P.2d 1188 (1997). To determine legislative intent,

we look first to the plain language of the ordinance. *Fraternal Order of Eagles, Tenino

Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d

655 (2002).

We seek to resolve this appeal by discerning the intent of Franklin County by

examining the plain language of the 2008 comprehensive plan, but we wonder what to do

27

if the language confuses us. The County drafted the 2008 comprehensive plan. We generally construe a document against the drafter. *Cronin v. Central Valley School District*, 23 Wn. App. 2d 714, 756, 520 P.3d 999 (2022). But we reject this principle in this setting because the County acted in its legislative capacity when adopting the 2008 plan, and this principle conflicts with Supreme Court precedent in *King County v. Central Puget Sound Growth Management Hearings Board*, 91 Wn. App. 1, 12, 915 P.2d 1151 (1998) *rev'd in part on other grounds*, 138 Wn.2d 161, 979 P.2d 374 (1999). Under Washington State Supreme Court precedent, when interpreting a comprehensive plan that is not a "'model of clarity'" the local government's "interpretation is entitled to great weight." *King County v. Central Puget Sound Growth Management Hearings Board*, 91 Wn. App. 1, 12 (1998). As analyzed later, the ALLTCS designation criteria identified in the County's 2008 plan, particularly as it applies to *Franklin Crops*, lack clarity.

We do not give unlimited deference to Franklin County's intent. The County's interpretation must be reasonable. *State v. Yon*, 159 Wn. App. 195, 199, 246 P.3d 818 (2010); *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wn. App. 361, 375, 44 P.3d 929 (2002).

The GMHB wrote that it cannot look beyond the language of the 2008 comprehensive plan when discerning whether the plan designated *Franklin Crops* as ALLTCS. Both parties rely on evidence extrinsic to the comprehensive plan when urging their respective positions. We consider conduct and writings of Franklin County

28

subsequent to the 2008 comprehensive plan helpful in discerning intent. *Scott Galvanizing, Inc. v. N.W. EnviroServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993); *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wn. App. 361, 375 (2002).

*Franklin Crops*

We now arrive at the controlling question: did the 2008 comprehensive plan designate *Franklin Crops* as ALLTCS? We ruminate out loud over the arguments for declaring *Franklin Crops* to be ALLTCS and, conversely, for ruling *Franklin Crops* to be outside the confines of ALLTCS protection. Counterarguments oppose each argument. We refer to arguments supporting the designation of *Franklin Crops* as ALLTCS in the 2008 plan as the "pro arguments" and to arguments against such designation as the "con arguments."

We first review arguments untethered to the language of the 2008 comprehensive plan. On the con side, the GMA distinguishes between agricultural land in general and agricultural lands of long-term commercial significance. The GMA refers to "agricultural lands" without referring to the lands as ALLTCS. Thus, the GMA assumes that some agricultural land will not be designated as ALLTCS. Just because *Franklin Crops* constituted farmland does not necessarily mean that it was designated as ALLTCS. Farmland closest to a major city and adjacent to an UGA, such as small portions of

29

*Franklin Crops*, would be less likely to be considered ALLTCS. On the pro side, much of *Franklin Crops* lies miles from Pasco and the city's UGA.

Both parties mention RCW 36.70A.060(4), a statute that precludes a county from designating agricultural land as ALLTCS unless the county "has enacted a program authorizing transfer or purchase of development rights." Franklin County lacks any such program. We consider the absence of such a program unenlightening in discerning the County's intent behind including *Franklin Crops* on Map 8. No evidence suggests that county officials knew of this statute and purposely ignored the statute or attempted to comply with it in 2008.

On the con side, the Franklin County planning director declared, on November 17, 2020 at a county planning workshop, that the proposed Pasco UGA did not include any ALLTCS. In a report prepared for the Franklin County Board of County Commissioners, county planning staff wrote that the UGA expansion included no acres earlier designated as ALLTCS. The County stated this position before any dispute arose with Futurewise. The report assumed that the 2008 plan did not designate *Franklin Crops* as ALLTCS. On the pro side, neither the planning director nor the planning staff revealed any analysis behind the conclusion nor specifically declared that *Franklin Crops* had not been designated as ALLTCS. The planning staff's position came a decade after the adoption of the 2008 comprehensive plan. The County presented no evidence that the 2020 planning director or planning staff played any role in the preparation of the 2008 plan.

On the con side, Franklin County did not draft the 2008 comprehensive plan with the aim toward defending it in court. The plan may have been drafted by a planner who lacked a detailed understanding of agriculture and soils. On the pro side, the county staff should have competently prepared the comprehensive plan and the Board of County Commissioners should have demanded that the plan be a model of clarity before approving its adoption. In an agricultural county, planning officials should readily possess knowledge of soils and other agriculture subjects.

We move to arguments connected to the language of Franklin County's 2008 plan. One paragraph of the 2008 comprehensive plan began by defining "agricultural lands of long-term commercial significance" as "soil classification 1-3 according to the Land Capability Classification of the USDA Soil Conservation service." AR at 1438. That same paragraph further added to the definition the "County's Prime, Unique and of State and Local Significance soils as generally shown and mapped by the Franklin Conservation District on Map 8." AR at 1438. Map 8, titled "Agricultural Lands," listed *Franklin Crops* in its legend. As the pro argument goes, crops are agricultural in nature. Since the 2008 comprehensive plan employed Map 8 to assist in identifying ALLTCS, Map 8 must have designated *Franklin Crops* as ALLTCS. Map 8 did not differentiate between agricultural lands included in ALLTCS-designation and excluded from ALLTCS-designation, so the map must have intended that ALLTCS encompass all cropland.

On the con side, Map 8 is a poor indicator of the land designated as ALLTCS in Franklin County because the map does not expressly identify land embraced inside this important classification. Although the 2008 comprehensive plan referenced Map 8 in its definition of "agricultural lands of long-term commercial significance," the plan language limited the designation to those lands shown with "Prime, Unique and of State and Local Significance soils." AR at 1438. Map 8 did not identify "Prime Irrigate[d] Lands," "Prime Dryland," "Fields with Quincy Soils," and *Franklin Crops* as possessing any of these types of soil. Map 8's legend entries concerning irrigated land and dryland incorporated the word "prime" to create the categories of "Prime Irrigate[d] Lands" and "Prime Dryland." AR at 1441. Thus, these two categories must have included land with the requisite soil composition to classify it as prime farmland. On the pro side, Franklin County agrees that land designated as ALLTCS included the land in the legend category "Fields with Quincy Soils," but this designation lacks the word "prime." Although the 2018 plan establishes that the County classifies land within the "Fields with Quincy Soils" label as unique farmland, one having access only to the 2008 plan would not have been privy to this important piece of information as that plan was silent in that regard.

On the con side, the 2008 comprehensive plan's definition of "long-term commercial significance," not only mentioned soil composition, but also the land's proximity to population areas. AR at 1437. Thus, the proximity of an area of land in relation to the city of Pasco is a factor to be considered in determining whether that land

32

may properly be designated as ALLTCS. Futurewise challenges land adjacent to Pasco from entering the UGA. This portion of *Franklin Crops* should not be deemed ALLTCS-designated.

On the pro side, Franklin County lacked any purpose for creating the category of *Franklin Crops* and assigning that label to land on Map 8 unless it desired to designate the land within that label as ALLTCS. No other literature employs this term for land within the County. On the con side, Map 8 also lists the categories of "Urban Growth Boundaries," "Federal Lands," and "Rural Lands," but Futurewise does not suggest that the County designated these other three categories as ALLTCS because they were included on Map 8. AR at 1441. Furthermore, some portions of *Franklin Crops* land on Map 8 are shown to fall within areas of land labeled "Prime Irrigate[d] Land," "Prime Dryland," and "Fields with Quincy Soils," whereas other portions of *Franklin Crops* land on the map are shown to fall outside of those labeled areas. AR at 1441.

On the con side, the origin and meaning of *Franklin Crops* is a mystery wrapped in an enigma. The phrase *Franklin Crops* is found nowhere in the 2008 comprehensive plan other than Map 8. The prose inside the body of the plan nowhere identifies *Franklin Crops* as ALLTCS. No evidence helped to explain why Franklin County distinguished land within *Franklin Crops* from other land in the county. The County would not have placed, in the important ALLTCS category, land attached to a map label that was an anomaly and not created as part of deliberate planning.

33

On the con side, the 2008 plan defined ALLTCS as "soil classification 1-3 according to the Land Capability Classification of the USDA Soil Conservation service." AR at 1438. The plan's "Generalized Soils" map (Map 1) and Table 3 assigned a portion of land within *Franklin Crops* a soil classification of 7. This portion of land cannot reasonably be considered to be ALLTCS-designated.

On the con side, intervenors argue that it employed Map 1 and Table 3 in the 2008 comprehensive plan be indicative of soil types for ALLTCS-designation purposes. On the pro side, Franklin County's argument ignores the plain language of the 2008 comprehensive plan. Table 3 did not reference "soils," but rather "soil associations" or groups of related soils. AR at 1344. The land capability classifications are not indicative of any particular soil type. Instead, they are "[c]lassification[s] of each *generalized* soil association." AR at 1373 (emphasis added). Map 1 includes "Generalized Soils," not the actual soils. AR at 1376.

On the pro side, Futurewise submitted an appendix that analyzed soils as described in Natural Resources Conservation Service mapping data from September 2019. The data shows a high percentage of the soils falling within the USDA classifications of 1, 2, and 3. We are unable to reconcile Futurewise's appendix with the "Generalized Soils" map and Table 3 of the 2008 comprehensive plan. AR at 1376. Consistent with Futurewise's appendix, the GMHB found that soils with *Franklin Crops* bore a USDA classification of 1 through 3.

34

On the con side, we seek to discern the intent of Franklin County in 2008. A table contemporaneous to 2008 holds more importance than an appendix compiled in 2019 in deriving this intent. The 2008 comprehensive plan also did not solely define ALLTCS as land with soil classifications of 1-3. The plan read that the County adjudged land to be ALLTCS based on "soil types, geological structure, location, and other unique identifiers." AR at 1437. Thus, according to the County, even if *Franklin Crops* included land with a soil classification of 1-3, the land did not necessarily require ALLTCS designation. From this argument, it follows that, in 2008, the County possessed the liberty to exclude farmland from ALLTCS designation regardless of the class of soil in the land. We may rule in favor of the County without rejecting the GMHB's finding.

On the con side, the 2008 plan did not clearly outline Franklin County's ALLTCS designation criteria. Instead, as illustrated by the following language taken from the 2008 plan, the County provided conflicting information regarding the amount of weight it places on soil classification in determining whether to designate land as ALLTCS:

> Franklin County identifies resource lands of long-term significance using distinctive characteristics *such as soil types, geologic structure, location, and other unique identifiers characteristic of the resource and set forth in the Act*.
> . . . .
> In Franklin County agricultural lands of long-term commercial significance are soil classification 1-3 according to the Land Capability Classification of the USDA Soil Conservation service.

AR at 1437-38 (emphasis added).

35

On the con side, the record failed to show that Franklin County took any steps in 2008 to determine the geology, location, or other unique identifiers of *Franklin Crops* and assess whether those characteristics rendered *Franklin Crops* amenable to ALLTCS status. The record even failed to show any recognition by the Board of County Commissioners in 2008 as to the soil qualities inside *Franklin Crops*. The presumption should be that agricultural land is not considered to be ALLTCS-designated unless the record establishes that the County considered the identifiers and characteristics of an area of land labeled on Map 8. On the pro side, the record also fails to show that the County took any steps to determine the characteristics of the land in "Prime Irrigate[d] Lands" and "Prime Dryland." AR at 1441. Yet, the County concedes that ALLTCS-designation embraced these two areas on Map 8.

After dissecting and reconstructing Map 8 and other language within Franklin County's 2008 comprehensive plan, we remind ourselves of the principle that we should defer to the GMHB when substantial evidence supports the Board's factual determinations. One might argue that the interpretation of a comprehensive plan resolves a dispute of facts. As the argument goes, we are discerning the meaning of a document, rather than a statute or regulation. We are discerning the intent of the drafter of the document, not the intent of a legislative body. Under contract principles, when two or more readings of contract language are reasonable, a question of fact exists when discerning the parties' intent. *Western Farm Services, Inc. v. Olsen*, 114 Wn. App. 508,

36

519, 59 P.3d 93 (2002), *rev'd in part on other grounds*, 151 Wn.2d 645, 90 P.3d 1053 (2004).

We decline to apply deference to the GMHB with regard to its ruling as to the intent behind language in the 2008 comprehensive plan for several reasons. First, the Franklin County Board of County Commissioners adopted the 2008 comprehensive plan as part of the legislative process. Second, the parties do not dispute any underlying facts, only the meaning of language scattered throughout a document. Assuming one deems the interpretation of the 2008 plan to constitute a factual determination, we would still conclude that the GMHB committed legal error by failing to defer to Franklin County's interpretation of Map 8.

After anatomizing and rebuilding Franklin County's 2008 comprehensive plan, we conclude that land designated as ALLTCS in the plan did not encompass the land labeled as *Franklin Crops* on Map 8. Map 8's reference to *Franklin Crops* lacks clarity. Many of the provisions of the plan support exclusion of *Franklin Crops* from ALLTCS-protection. The County's interpretation of the plan, although not the only reasonable interpretation, is reasonable. No evidence suggests that the County employs fraud or deceit when now advocating a construction of the 2008 plan as excluding *Franklin Crops* from ALLTCS-designation. RCW 36.70A.320(3) declares that the GMHB should find compliance of the County's comprehensive plan unless the County acts "clearly erroneous in view of the entire record before the board." The County's actions were not

37

clearly erroneous. Deference to the County's planning actions supersedes our deference to the GMHB.

We value Futurewise's devotion to environmental goals. We also recognize, however, the need for housing in a burgeoning community in an era of pandemic homelessness. New housing will support agriculture by accommodating Franklin County farmworkers and workers in Pasco's thriving food processing industry. We expect that Futurewise wishes for any expansion to occur upward rather than outward and such wish is a legitimate, if not important, goal. We also encourage upward expansion but, because of the nature of the Tri-Cities, expect most expansion to occur outward in the coming decade.

Finally, we recognize that, although unlikely, some of the UGA can return to agricultural designation in future comprehensive plans. A comprehensive plan is a guide and not a document designed for making specific land use decisions. *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 873, 947 P.2d 1208 (1997); *Lakeside Industries v. Thurston County*, 119 Wn. App. 886, 894-95 (2004).

CONCLUSION

Franklin County's 2008 comprehensive plan did not designate *Franklin Crops* as ALLTCS. Therefore, when adding acreage to the city of Pasco's UGA in the 2018 plan, the County did not need to follow the steps required by the GMA and SEPA to include land previously labeled by Map 8 as *Franklin Crops* inside the UGA. We reverse the

No. 38907-3-III,
*Franklin County v. Futurewise*

GMHB's ruling in favor of Futurewise and remand for further proceedings consistent with our decision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____Fearing, J._____
Fearing, C.J.

WE CONCUR:

_____Siddoway, J._____
Siddoway, J.

_____Pennell, J._____
Pennell, J.